## SOUTHERN RAILWAY COMPANY *v.* ATLANTA STOVE WORKS.

1. Under the Civil Code, § 4869, which provides that "a private person may by mandamus enforce the performance by a corporation of a public duty as to matters in which he has a special interest," it is not necessary, before the remedy there given would be available, that such private person should have no adequate remedy by action for damages.

2. A railroad company owes to the public a duty to obey the reasonable tariff rates fixed by the State railroad commission, and a shipper, whose shipment has been rejected on the ground that one of the rates of the commission's schedule is, in the opinion of the carrier, too low, has such special interest in the observance by the railroad company of its duty to the public in this regard as that he may compel its performance by mandamus.

3. The railroad commission, in fixing its schedule of rates, may consider any economic or industrial factor which may potentially influence freight transportation; it may also consider the natural advantages of localities. These natural and traffic conditions may enter into rate adjustment, and may, in a proper case, justify a classification of commodity rates between localities, whereby the rates between designated points may be excepted from the general classification. Where the commission, after fixing a reasonable schedule of rates for all commodities, makes an exception, by amendment to the general schedule, of one of the commodities provided for in the general schedule, by fixing a lesser rate therefor between designated points, such exception can not be said, as a matter of law, to be discriminatory. On the contrary, the presumption is in favor of the reasonableness of the commission's classification, and the burden is on the railroad company to allege and prove that the classification is illegal.

4. The grant of a mandamus absolute necessarily adjudicates that the matters averred in the plea are no defense to the issuance of the writ. An assignment of error upon the judgment making the rule for mandamus absolute brings under review the sufficiency of the answer as a defense to the proceeding. The cases of *Hollis* v. *Nelms,* 115 *Ga.* 5, *Stromberg-Carlson Co.* v. *Bisbee,* 115 *Ga.* 346, and *Ray* v. *Anderson,* 117 *Ga.* 136, decided by five Justices, wherein the contrary principle is enunciated, are disapproved, and will not be followed.

5. The petition for mandamus alleged that a shipper tendered to the railroad company, at the proper place, certain goods for transportation over its line to a particular station in this State, and tendered the freight tariff prescribed by the railroad commission, and that the railroad company refused to accept the shipment, because the amount of money tendered was deemed by it insufficient, though in accord with the commission's rate, and the prayer was for the writ of mandamus, compelling the defendant to transport the articles alleged to have been tendered, and to otherwise observe and obey the order of the commission, promulgating a particular commodity rate. The answer de-,

nied an actual tender of the goods, but admitted that the shipper stated to its agent that he desired to make a tender of the goods for transportation over its lines to the designated point, at the commission rate on the particular commodity. The tender of the money alleged in the petition was not denied, and the answer admitted that the railroad company "declined to put into effect on its line said circular 309," which circular prescribed the particular rate. The tenor of the answer was that the particular rate was unreasonable and discriminatory, and that the defendant would not obey the commission's order establishing the particular rate. *Held*, that inasmuch as the defendant avers that it declines to put into effect the commission's order, actual tender of the articles is not required, and a denial of the actual tender of the articles is insufficient to raise a defensive issue of fact.

6. Circular 309 of the railroad commission, prescribing a certain rate on stoves, etc., between specified points, is amendatory of the general schedule or body of rates promulgated by the commission. The reasonableness or unreasonableness of a single commodity rate can not be determined from a consideration of the reasonableness of the single rate, apart from the general schedule of rates. Courts have no power to fix rates, but may restrain the commission from putting into effect and enforcing an unreasonable body of rates. An averment which attacks the unreasonableness of an individual rate, without reference to its relation to the whole body of rates, raises no defensive issue of fact.

7. A denial in the answer of a conclusion drawn from certain allegations of fact does not make an issue of fact.

8. The existence of a temporary injunction granted in a suit by a third person against the railroad commission and the respondent, in a different forum, temporarily restraining the commission from putting into effect similar rates prescribed in other circulars, is no bar to the petitioner in this case from prosecuting the remedy by mandamus.

9. An ad interim injunction, granted by a judge of the United States court, on a bill filed subsequently to the petition for mandamus, by the respondent in the mandamus proceeding, against the railroad commission, to enjoin the specific rate which petitioner is seeking by mandamus to compel respondent to observe, to which litigation in the United States court the petitioner is not a party, affords no sufficient reason for staying the mandamus proceeding, or denying the issuance of a mandamus absolute.

Argued February 20,—Decided May 14, 1907.

Mandamus. Before Judge Pendleton. Fulton superior court. June 18, 1906.

The Atlanta Stove Works applied to the superior court of Fulton county for the writ of mandamus against the Southern Railway Company. The petition alleges, that the petitioner is a corporation, duly organized under the laws of the State of Georgia, and engaged in the business of manufacturing and selling stoves, ranges,

hollow-ware and other similar products. The Southern Railway Company, which is named as defendant, is a corporation of the State of Virginia, and is a common carrier, operating lines of railroad in the State of Georgia and in the county of Fulton, and having an office and agent and conducting business in that county. Petitioner, on August 29, 1905, delivered at the freight depot of the defendant, in the city of Atlanta, Fulton county, Georgia, for transportation over its road to Columbus, Georgia, a shipment consisting of three heating stoves, consigned to King Hardware Company, at Columbus, Georgia, and tendered to the agent ninety cents in payment of freight charges on the shipment from Atlanta to Columbus, in conformity with the rate established by the railroad commission of Georgia, on July 19, 1905, effective August 19, 1905, as promulgated in circular number 309 of the commission. The articles offered were received by the defendant, but the tender of ninety cents in prepayment of the freight charges thereon was refused, and petitioner was informed by the agent of the defendant that it would and did refuse to transport the articles at and for the rates prescribed in circular 309. To the petition is attached a memorandum bill of lading of the articles offered to be shipped, and also a copy of circular 309, which is as follows: "Railroad Commission of Georgia, J. P. Brown, Chairman, H. Warner Hill, Jos. M. Brown, Commissioners. Geo. F. Montgomery, Secretary, Atlanta, Ga., July 19, 1905. Circular 309. Rates on stoves, stove plates, stove furniture and hollow-ware, including the necessary pipe. Effective with the circular rates on stoves, stove plates, stove furniture, and hollow-ware, including the necessary pipe, between the points named below, shall be made upon the following basis. On less than car-load shipments for distances less than 100 miles, use 6th class, plus one cent; for distances in excess of 100 miles, use 6th class, less one cent. On car-load shipments for distances less than 100 miles use seventy-five per cent. of 6th class, plus one cent; for distances in excess of 100 miles use seventy-five per cent. of 6th class, less one cent. Between Atlanta, Athens, Augusta, Brunswick, Columbus, Dalton, Macon, Rockmart, Rome, Savannah, and Adel, Adrian, Albany, Americus, Arlington, Athens, Atlanta, Augusta, Bainbridge, Bremen, Brunswick, Cartersville, Cedartown, Collins, Columbus, Cordele, Covington, Culloden, Cuyler, Dalton, Dawson, Dublin, Elberton, Empire, Everett, Fitzgerald, Fort Gaines,

Fort Valley, Griffin, Harris, Hawkinsville, Haylow, Helena, Jesup, LaGrange, Macon, Madison, Marietta, Meldrim, Milledgeville, Millen, Montezuma, Moultrie, Newnan, Offerman, Pidcock, Pitts, Quitman, Rockmart, Rome, Sandersville, Savannah, Sparks, Statesboro, Stillmore, Swainsboro, Tennille, Thomaston, Thomasville, Tifton, Valdosta, Vidalia, Vienna, Washington, Waycross, Woodbury, Worth. To and from all local stations not named above the rates shall be made upon the lowest combination, by the use of the rates herein published. This circular shall become effective August 19, 1905, and repeals everything in conflict. By order of the Board.    J. P. Brown, Chairman.    Geo. F. Montgomery, Secretary."

It is further alleged that defendant is a common carrier and a quasi public corporation, and as such is under the legal obligation to receive and transport freight at the rates established by law, which, on the articles mentioned, from Atlanta to Columbus, is sixth class, less one cent per hundred pounds in less than car-load lots, which on 375 pounds, the weight of the shipment offered, amounts to ninety cents. The action of the defendant, in refusing to transport the articles offered for shipment on the tender of the rate provided by law, is declared to be arbitrary, illegal, and greatly to the injury and damage of petitioner, its property and business. In addition to the prayer for process, petitioner prays that on the hearing the mandamus may be made absolute, and the defendant be required to transport the articles tendered, between Atlanta and Columbus, at the rate prescribed by the commission, and otherwise to observe, respect, and obey the order of the railroad commission in promulgating circular 309, and to accept the rates therein prescribed in respect to other and future shipments of the commodities therein named.

The defendant resisted, by demurrer and answer, the making of the mandamus absolute. The demurrer was on the grounds, that the facts set out in the petition did not show that the plaintiff was entitled to the remedy sought, and therefore the court had no jurisdiction to grant the mandamus to compel the railroad company to perform towards the petitioner what the petitioner prayed the court to require it to do; that the remedy by mandamus is not authorized by the allegations in the petition, because there is an adequate legal remedy by action at law, for any damage which the pe-

titioner might ·suffer by reason of the refusal of the respondent to transport the petitioner's goods, and such remedy is the one given by statute for the refusal or failure of a common carrier to transport freight at the rate fixed by the commission; and that the remedy by mandamus does not obtain where any other legal and adequate remedy exists; that circular 309, the benefits of which the plaintiff seeks by mandamus, shows upon its face that it is illegal and void, in that it is made to apply to comparatively few points in the State of Georgia, and the lower rates therein are for the sole and exclusive benefit of particular points, and all other points in the State are injuriously discriminated against; that to enforce such rate would be a taking of the property of the defendant without due process of law, and a denial to it of the equal protection of the laws, contrary to article 14, section 1, of the amendments to the constitution of the United States; and that the circular is void for the further reason that the railroad commission has no power to make rates which are discriminatory; that the General Assembly which created the commission had no authority under article 4, section 2, paragraph 1, of the constitution of the State of Georgia, to confer power upon the commission to make rates discriminatory, in favor of places or persons in this State.

By way of answer the railroad company averred, that, being desirous to perform its duties to the public as a common carrier at all times to the best of its ability, it had undertaken to observe and carry out in the past the rates fixed· by the railroad commission; that it had never declined or refused to accept and transport any goods, merchandise, or other things, and especially that it did not decline to accept and transport three cooking stoves from Atlanta to Columbus, tendered to it by the applicant; that on August 29, 1905, an officer of the plaintiff stated to an agent of respondent that he desired to make respondent a tender of a small shipment of stoves, consigned to Columbus, upon the payment of freight charges based upon the reduced rates as per circular 309 of the railroad commission of Georgia. No stoves were actually present, and none had been carried to respondent's depot, the place for the reception of goods intended to be tendered to it. Respondent never declined to accept and receive any stoves consigned to King Hardware Company at Columbus, Georgia. Respondent averred that everything that occurred between the respresentative of the plain-

tiff and its agent was by reason of the fact that the plaintiff wished to make a test case in the courts. It is further averred that the respondent is now willing to adjust all its rates in accordance with those fixed by the railroad commission whenever it can do so legally; that while it is true that the railroad commission has from time to time issued circulars reducing and regulating the tariff rates of railroads in Georgia, these rates have been reduced so much that the business of the railroads affected by them does not, at such rates, compensate for the service rendered in handling and transporting the same. Such has been the effect upon the business done by this respondent, the compensation for which was fixed by the commission; yet respondent has uniformily adjusted its rates to those so fixed. Respondent further averred, that on May 10, and June 6, 1905, the commission issued circulars 305 and 306, fixing the rate on stoves, stove-pipes, etc., being the same class of articles covered by circular 309, and that the rates fixed by these circulars were so unjust, unreasonable, unfair, and discriminatory in favor of one point against other points, that certain firms, persons or corporations doing business in the city of Savannah, Georgia, filed a petition in the superior court of Chatham county for an injunction against the railroad commission and certain railroads, and, on August 16, 1905, an order was granted temporarily restraining and enjoining the railroad commission from putting into effect circulars 305 and 306 on any line of railroad in Georgia, and also from issuing and putting any other circular prescribing rates similarly illegal, unjust, unreasonable, or discriminatory with reference to the commodities from Atlanta, or any other place in the State of Georgia, and also from instituting or bringing any action for penalties or damages against any of the defendants for failing to put into effect circulars 305 and 306, or other similar circulars with reference to the commodities. A copy of this restraining order is attached to the answer. It is averred that the commission did not attempt to put into effect either circular 305 or 306, and that the respondent is informed and believes that both of these circulars were repealed and another circular was issued, numbered 309, dated July 19, 1905. It is alleged that circular 309 covers the same commodities as 305 and 306, and is likewise unjust, unreasonable, and discriminatory,—as much so as either 305 or 306. And so evident was it, "the same illegality

in hand in circular No. 309 that had rendered Nos. 305 and 306 obnoxious; and Judge Paul E. Seabrook on August 31st, 1905, upon the petition of the Central of Georgia Railway Company, and this respondent, before said circular had been put into effect," granted an order to the commission to show cause why the injunction theretofore granted should not be extended to circular 309, and fixed a date for a hearing, which has not yet arrived (October 7, 1905), and in the meantime a restraining order was issued in terms and to the extent of the previous injunction.

Respondent further answered, that it was its judgment that by virtue of the injunction of August 16, the railroad commission was restrained and enjoined from issuing circular 309, and this respondent was informed and believed that all other railroads in the State had reached a like conclusion, and the railroad commission would not put the circular into effect by reason of the injunction, and that it had no legal right to put the circular into effect, and to attempt to do so would be illegal, and the effort void. This respondent, acting from the best light it could obtain, declined to put into effect on its line circular 309. It was further averred, that circular 309 could not be made effective as to respondent so long as it is not enforceable against other railroads in the State, because it would be an unjust discrimination against it to be compelled to transport commodities covered by circular 309 at a less rate of freight than other railroads of the State; that while it might be possible for the railroad commission to fix a rate for respondent, and the same might be legal, yet when the circular fixing the rate extends to all railroads alike, it is not legal to enforce it against some embraced therein and not enforce it against others; that plaintiff's right to have respondent to transport its stoves at the rate fixed by circular 309 is not certain, clear, and free from doubt.

By amendment it was further alleged, that the case of the Palmer Hardware Company against the Central of Georgia Railway Company and others, in which an injunction was issued against the railroad commission of Georgia, preventing the commission from putting into effect and enforcing circulars 305 and 306 (in which the respondent was a party and brought under the terms of the injunction), was finally heard and decided by the Supreme Court of Georgia, and the judgment granting the interlocutory injunction was reversed upon the ground that Chatham superior court did

not have jurisdiction of the case, as none of the members of the railroad commission had a domicil in that county. The merits were not passed upon, and the legality of circular 309 was left open and undecided. The defendant further averred, that, before the injunction above referred to was dissolved, the Southern Railway Company filed its bill of complaint in the United States circuit court for the northern district of Georgia, seeking to enjoin the railroad commissioners from putting into effect and enforcing circular 309, which was charged in the bill to be illegal because the same was unreasonable, unjust, discriminatory and confiscatory, and because the enforcement of circular 309 would deprive it of its rights under the fourteenth amendment of the constitution of the United States, in that it would be a taking of its property without due process of law, and a denial to it of the equal protection of the law; that upon this bill of complaint a temporary injunction was granted by Judge Newman, restraining the members of the railroad commission from putting into effect, and from enforcing, the rates prescribed in circular 309, which order is now in full force and effect; that by reason of this restraining order, circular 309 is not in force upon the Southern Railway Company, or, as a legal result, upon any other railroad in Georgia, and the rates fixed therein can not be lawful until this restraining order is dissolved and the question as to the legality of the rates is determined by the United States circuit court. For this cause, defendant asserts that the plaintiff has no right to the writ of mandamus. The comity which exists between Fulton superior court and the circuit court of the United States of the northern district of Georgia is invoked as a reason why Fulton superior court should take no steps and pass no order which would nullify and set at naught the restraining order of the United States court.

The defendant averred that the rates prescribed by circular 309 were unreasonable, in that the amount earned by respondent in the transportation of the articles covered by the circular, between the points therein prescribed, would be less than the cost of service; and the effect of the enforcement of circular 309 would be to take the property of respondent without due process of law, denying it the equal rights and protection of the law, contrary to article 14, section 1, of the amendment to the constitution of the United States, which was copied in full in the answer. It

was further averred that the commission had no power to prescribe rates and make tariffs on one particular class of articles, independent of and without reference to the tariffs and schedules on all other articles; and between certain particular points in Georgia and not between all points in the State; that circular 309 changes the class in which stoves, etc. are placed, from class 1, which is the highest rate fixed by the commission, to class 6, in which there are very much lower rates; that the railroad commission had previously fixed the rates of transportation for the articles covered by circular 309, which were just and reasonable, and the commission, by circular 309, has greatly lowered the rates heretofore existing between certain particular points in this State, and left in force the just and reasonable rates prescribed by the commission prior to the issuance of circular 309 between the great majority of points in the State; that the General Assembly was forbidden by article 4, section 2, paragraph 1, of the constitution of Georgia from conferring upon the railroad commission the power to make rates which were discriminatory. Respondent attached, as exhibits, the tariff and schedules of the railroad commission, showing the rates in effect on the articles covered by circular 309, to all points not covered by the circular.

At the hearing the rule nisi for mandamus was made absolute; and that judgment is alleged to be erroneous for the various reasons set forth in the demurrer and answer filed by the railroad company.

*Dorsey, Brewster, Howell & Heyman* and *Sanders McDaniel,* for plaintiff in error.

*Ellis, Wimbish & Ellis,* contra.

EVANS, J. (After stating the foregoing facts.)

1, 2. By demurrer the railroad company disputed the plaintiff's right, under the allegations of the petition, to the remedy of mandamus. The writ of mandamus is of most ancient origin. It issued from a common-law court, to afford extraordinary legal relief in cases where the ordinary remedy at law was inadequate. Originally it was a prerogative writ, so called from the fact that it proceeded from the king himself, in his court of king's bench, and was granted where one was entitled to an office or function, and there was no other remedy. High, Ex: Leg. Rem. §3. It still preserves many of its prerogative features in England, but in this State it is a writ of right. When employed to enforce official duty,

the writ of mandamus issues only where there is no other specific legal remedy for the legal rights. Civil Code, §4867. We are cited to many decisions and some text-books as maintaining the doctrine found expressed in Hutchinson on Carriers, §115 b, that "if the carrier refuses without lawful reason to accept and carry goods, the owner may maintain an action against the carrier for damages sustained by such wrongful refusal. This remedy by action is usually adequate to secure the plaintiff's rights, and therefore, in accordance with well-settled principles, mandamus will not lie to enforce the performance of the duty." It is contended that the quotation from Hutchinson on Carriers is sustained by our Civil Code, §4867, and that the act organizing the railroad commission furnishes the shipper a specific and exclusive remedy against a common carrier for refusal to obey a reasonable tariff regulation promulgated by the commission: viz. a right to recover actual damages in all cases, and exemplary damages where the violation of law is wilful. Civil Code, §2317. It is further contended that even if the remedy given by section 2317 is not exclusive, the plaintiff has an adequate remedy in the Civil Code, §3216, by paying the overcharge and suing for double the amount of the overpayment, if it is not refunded in thirty days. The conclusive reply to these contentions is the Civil Code, §4869, which provides: "A private person may by mandamus enforce the performance by a corporation of a public duty as to matters in which he has a special interest." The rule quoted from Hutchinson on Carriers is not applicable in this State, and if the applicant for mandamus brings his case within the provisions of the Civil Code, §4869, he is entitled to the writ, without making it appear that he has no adequate remedy by a suit for damages. *Southern Express Co.* v. *Rose,* 124 *Ga.* 585. As sustaining this view these cases may be cited: *Habersham* v. *Savannah Canal Co.,* 26 *Ga.* 665; *Mitchell* v. *Hay,* 37 *Ga.* 581; *Sav. Canal Co.* v. *Shuman,* 91 *Ga.* 400; *Freeman* v. *Macon Gas Light Co.,* 126 *Ga.* 843.

There can be no question as to the authority of the railroad commission to prescribe reasonable maximum tariff rates, and the consequent duty of the common carrier to observe such regulations. Nothing appears on the face of the petition to impeach the fairness or reasonableness of the commission's rate, and we are bound to assume the legality of the commission's action, until its illegality

is made to appear. The common carrier's duty to the public is to obey the reasonable regulations of the commission; and if the corporation fails to perform such duty, it may by mandamus be compelled to do so. Has the plaintiff such special interest in the performance of this public duty that he may invoke the remedy? The plaintiff is a corporation engaged in the business of manufacturing stoves, ranges, hollow-ware, and similar products. It tendered the carrier at Atlanta, Georgia, a shipment of three stoves, for transportation over its lines of railway, to Columbus, Georgia, offering to pay the freight charges fixed in the tariff promulgated by the railroad commission. The carrier declined to receive the shipment at and for the rates prescribed by the commission. The plaintiff has a special interest in this particular shipment; its business is manufacturing and selling stoves, etc., which is controlled to a considerable extent by the railroad rates. We think that the allegations of the petition show that the plaintiff has such special interest, in the performance by the corporation of its public duty of obeying the reasonable regulations of the commission, that it may invoke the remedy of mandamus.

3. The demurrer challenges the constitutional power of the commission to fix rates between particular localities, and the answer reiterates the lack of constitutional power of the commission in this respect. The answer does not make any issue of fact as to the reasonableness of the exception of the named localities from the general tariff schedule; so that the question presented in the answer is included in the demurrer, and becomes a question purely of law. Circular 309 is but an amendment to the general body of rates, and should be so treated. We have then the question of the power of the railroad commission, after fixing a reasonable schedule of rates for all commodities, to make an exception of one of the commodities provided for in the general schedule, by fixing a different rate therefor between certain designated points. Of course, if this power inheres in the commission, its exercise will be deemed reasonable, until the contrary is shown. The practice of railroads of fixing a uniform rate to competitive points, and rates to other points ascertained, by adding, to the rate to the nearest competitive point, the local rate from that point to the particular station (where there is substantial reason for the carrier's selection of the basing point, and the rate is reasonable), has the approval of the Supreme

Court of the United States. Interstate Commerce Commission *v.* Louisville & Nashville R. Co., 190 U. S. 273. A carrier can not create artificial differences in market conditions, by arbitrary differential rates, whereby the products of different sections may be arbitrarily assigned to particular markets. When the carrier is forced to meet competition at a given point on its line, of necessity it must adjust its rates within the zone of the competitive point to the competitive rate to that point. . This condition may be artificially caused, and the adjustment by the carrier of its rates to such conditions can not be accepted, of itself, as a justification for making a schedule of rates based on the voluntary action of the carrier. We recognize the carrier's right to manage its internal affairs by reducing its tariff below the commission rate, and that such low rate affords no basis for an arbitrary reduction of the commission's maximum standard to the voluntary low rate of the carrier. / But we do contend that the commission, in the discharge of its duty to fix reasonable rates, is not precluded from the consideration of economic conditions recognized by the carriers in the conduct of their business. The full purpose of the creation of the commission would be thwarted if it could not consider and act on every economic or industrial factor potentially influencing the operation of a railroad and the transportation of freight. It can not act arbitrarily, nor by edict produce abnormal conditions of trade; it can not display favoritism by capriciously giving preferential rates to one locality which are denied to another. It may, however, recognize the traffic conditions between given points, and adjust its schedule to meet these conditions. If this is done in good faith, and upon sufficient reason, the rate fixed for the special conditions would not be discriminatory, because not applied to other localities, where the special conditions do not exist./ Circular 309 does not discriminate against persons or classes of persons by charging one a greater or less rate for the same service than is charged for all other persons similarly situated. It is an adaptation of rates to meet certain economic and industrial conditions in certain localities.

The case of Lake Shore R. Co. *v.* Smith, 173 U. S. 684, is entirely dissimilar to the case at bar. There the statute of Michigan fixed the passenger fare at three cents per mile, with a proviso that the railroad company should sell a thousand-mile ticket at

a given rate, less than three cents, good to be used by the purchaser and his family within two years. In the opinion Mr. Justice Peckham characterized this legislation as "a pure, bald, and unmixed power of discrimination in favor of a few of the persons having occasion to travel on the road, and permitting them to do so at a less expense than others, provided they buy a certain number of tickets at one time." The Interstate Commerce Commission, in dealing with the reasonableness or unreasonableness of grouping several stations within the zone of a common point, recognized that each community is entitled to benefits arising from its location and natural conditions (Minneapolis, 5 I. C. C. Rep. 571), and was of the opinion that "the practice of making one rate on the same product over a very large district, and thus equalizing the burdens of transportation to the same market, is only justifiable under special and exceptional circumstances." Newland *v.* Northern P. R. Co., 6 I. C. C. Rep. 131. The railroads entering New York were allowed to group stations which supplied the city with milk, and to charge a uniform rate from all stations in the group. Howell *v.* N. Y. R. R., 2 I. C. C. Rep. 272.

If the commission's investigation of the traffic condition between the ten named cities and the several basing points justified making the exception as provided in circular 309, they were not restrained from so doing by article 4, section 2, paragraph 1, of the constitution. This clause reads: "The power and authority of regulating railroad freights and passenger tariffs, preventing unjust discriminations, and requiring reasonable and just rates of freight and passenger tariffs, are hereby conferred upon the General Assembly, whose duty it shall be to pass laws, from time to time, to regulate freight and passenger tariffs, to prohibit unjust discriminations on the various railroads of this State, and to prohibit said roads from charging other than just and reasonable rates, and enforce the same by adequate penalties." The discrimination there referred to is unjust discrimination. The presumption is with the commission, that its action is within its constitutional powers; and until the rate complained of is proved to be unreasonably discriminatory, we must assume the rate to be lawful.

4. The point is made that as there was no attack on the sufficiency of the answer by way of demurrer or motion to strike in the court below, the question that the answer set forth no defense is

not properly before us.   The cases of *Hollis* v. *Nelms,* 115 *Ga.* 5, *Stromberg* v. *Bisbee,* 115 *Ga.* 346, and *Ray* v. *Anderson,* 117 *Ga.* 136, are relied on to sustain the proposition.   None of these cases were decided by a full bench, and we are not absolutely bound thereby.   We think the reasoning on which they are based is fallacious.   See *Crew* v. *Hutcheson,* 115 *Ga.* 533; *Kelly* v. *Strouse,* 116 *Ga.* 890.   A motion to make a mandamus absolute necessarily involves a determination that the averments in the answer either afford or do not afford a sufficient reason in opposition to the issuance of the writ.   If the answer avers matters which set forth no defense to making the rule absolute, in this day of directness in formulating the substantial issues by means of the pleadings its sufficiency is tested by the motion to make the rule absolute.   We would be retrograding to the old days of circumlocution and special pleading, holding fast to the form and letting go the substance of things, to say that in answer to a rule to show cause why a mandamus absolute should not issue, frivolous and wholly insufficient matters may be urged to defeat the rule, unless such frivolous answer was first stricken by motion or demurrer.   The assignment of error that the court erred in making the mandamus absolute, because the allegations of the answer raised certain issues of fact which should first have been submitted to a jury, raises the question whether any issue of fact was made by the answer.   We will now proceed to discuss this question.

5.  Counsel for plaintiff in error argue with much force and plausibility that the averments of the answer, narrating what occurred between the agents of the Atlanta Stove Works and the Southern Railway Company, relative to the proposed shipment of three stoves to Columbus, Georgia, coupled with the positive denial of any actual tender of the stoves for transportation, raised an issue of fact, which should have been submitted to the jury before further action by the court.   We will not repeat the defendant's version of what occurred, as the pleadings containing it are set out in the statement of facts.   In substance, the Atlanta Stove Works alleged, that it tendered to the railroad company, at its place of business at Atlanta, Georgia, three stoves for transportation, over its line of road, to the King Hardware Company, at Columbus, Georgia, and tendered the freight tariff, ninety cents, prescribed by circular 309, and that the railroad company refused to accept the stoves for ship-

ment, because the amount of money tendered was insufficient to pay the freight charges. The prayer for mandamus is that "the defendant be required to transport the said articles of merchandise between said points at said rates, and otherwise to observe, respect, and obey the order of the railroad commission of Georgia in promulgating said circular No. 309, and accepting the rates therein prescribed with respect to other and future shipments of commodities therein mentioned." In its answer the railroad denied an actual tender of the stoves, but admitted that an officer of the Atlanta Stove Works stated to its agent that he desired to make respondent the tender of a small shipment of stoves consigned to Columbus, upon the payment of freight charges based upon the reduced rates as contained in circular 309. There was no denial that the agent of the stove works tendered the agent of the railroad company ninety cents, the freight tariff on three stoves as per circular 309. The railroad company in its answer admits that it "declined to put into effect on its line said circular 309." The whole tenor of the answer is that the rates fixed in circular 309 are unreasonable, discriminatory, and confiscatory. It solemnly admits that for these reasons it will not put these rates into effect. Does not this admission in judicio excuse the necessity of proving a tender under the circumstances? The railroad company says, in effect, that it will not transport this shipment or any other shipment according to the rates of circular 309. What need is there to prove a tender under the circumstances? As is well said in Merrill on Mandamus, in language approved by this court: "The law never demands a vain thing, and when the conduct and action of the officer is equivalent to a refusal to perform the duty desired, it is not necessary to go through the useless formality of demanding its performance. Anything showing that the defendant does not intend to perform the duty is sufficient to warrant the issue of a mandamus." *Coffee* v. *Ragsdale,* 112 *Ga.* 710. We think, when the defendant's admission is applied to the allegations of the petition, that (unless the other matters set up in the answer present good cause) the plaintiff would be entitled to a mandamus compelling the defendant to accept from it not only this particular shipment, but any other, under the rates prescribed in circular 309. Looked at in this way, the answer, in this respect, did not make an issue of fact.

6. Many adjudications of courts of last resort have established the proposition that the presumption is that the rates fixed by the commission are reasonable, and the burden of proof is upon the railroad companies to show the contrary. Dow v. Beidelman, 125 U. S. 680; Chicago, etc. Ry. Co. v. Tompkins, 176 U. S. 167; Minn. & St. L. R. Co. v. Minnesota, 186 U. S. 257. The plaintiff in error contends that circular 309 bears internal evidence of the unreasonableness of the rates. No factor appears in this circular which may not properly enter into the problem of rate making. The circular does not fix an isolated and independent rate apart from the whole body of rates, but amends the general schedule, to the extent of its provisions. It is a matter of common knowledge in the traffic world that apparently insignificant causes sometimes influence the moving of traffic. Freight heretofore passing over the road of one carrier is perceptibly diverted in another direction or transported by a different carrier. The carrier's traffic agent is ever alert to discover the cause of the diversion of profitable business, and, when such cause is supposed to be discovered, to arrange or readjust his tariff schedules in such manner as to secure what may have been lost, as well as to increase the public patronage of his road. Rate fixing is impossible of being resolved into an exact science, because of the inharmony of basing criteria in different localities, and even in the same territory. Many factors must be considered in one instance which are wholly lacking in another case. Out of the dissimilarity of potential criteria in establishing rates grew the principle of classification. Classification has been extended to the character of the railroad, localities, commodities, amount of traffic, and many other conditions which directly affect the moving of traffic. In the recent treatise of Beale and Wyman on Railroad Rate Regulation, in chapter 18, the authors have grouped under topical heads some general bases of commodity classification, such as comparison of commodities, convenience in handling, value of the goods, car-load rates, and difference in rate between classes. Classification of commodities into classes is there said to be allowable so long as it is not disproportionate. After discussing several decisions rendered by the Interstate Commence Commission (§607), it is said that "the principle to be deduced from the cases which have just been discussed is that the differences in rates between the classes in a classification should not be disproportionate." From the necessity

of the case, where so many elements are obliged to be considered in fixing a commodity rate as part of the general schedule of rates, it is impracticable to fix a single commodity rate without reference to rates of other commodities, as well as other factors that properly may enter into the estimate. Chicago, etc. Ry. Co. *v.* Tompkins, 176 U. S. 167.

In the case of Minneapolis & St. Louis R. R. Co. *v.* Minnesota, 186 U. S. 257, the reasonableness of the rate on coal between two intra-state points was under review. The railroad company contended that this particular rate on a tonnage basis would render freight transportation receipts less than actual operating expenses. Testimony was submitted to sustain this contention. The court, speaking through Mr. Justice Brown, said: "The principal testimony, however, was intended to show that if the rate fixed by the commission for coal in car-load lots were applied to *all* freight, the road would not pay its operating expenses, although in making this showing the interest upon the bonded debt and the dividends were included as part of the operating expenses. But it so appears that if the old rate upon hard coal in car-load lots agreed upon by the roads were adopted as an average rate for *all* freights, the freight earnings of the road would have been largely increased. This would indicate that the rate fixed for coal must have been above the average rate, although coal is classified as far below the average. It is quite evident that this testimony has but a slight, if any, tendency to show that even at the rates fixed by the commission there would not still be a reasonable profit upon coal so carried." And further on in the same opinion it was said: "We do not think it beyond the power of the State commission to reduce the freight upon a particular article, provided the companies are able to earn a fair profit upon their entire business, and that the burden is upon them to impeach the action of the commission in this particular." As epigrammatically put in Smyth *v.* Ames, 169 U. S. 547: "What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth." We do not see how this result can be obtained except from an application of the whole body of rates to the railroad's entire business within this State.

Again, if the railroad company be permitted to contest the reasonableness of an individual commodity rate apart from the whole body of rates, the courts would be called on to fix and establish independent rates for different commodities. The courts would be at the beck and call of every carrier in the State to revise, change, or modify some particular rate. The courts have no such power. "The courts are not authorized to revise or change the body of rates imposed by a legislature or a commission; they do not determine whether one rate is preferable to another, or what, under all the circumstances, would be fair and reasonable as between the carriers and the shippers; they do not engage in any mere administrative work, but still there can be no doubt of their power and duty to inquire whether a body of rates prescribed by a legislature or a commission is unjust and unreasonable, and such as to work a practical destruction of rights of property, and if found so to be, to restrain its operation." Reagan *v.* Farmers Loan & Trust Co., 154 U. S. 362. The commission fixes a schedule of rates; some commodity rates are higher than others, and necessarily so; the entire body of rates are prescribed with respect to their interrelation; the low rate is presumably fixed with reference to the higher rate, and conversely; and a particular rate can not be said to be unreasonable, without showing it to be such when taken in connection with the whole body of rates. We therefore reach the conclusion that the averment of the 15th paragraph of the amended answer, "that the rates prescribed by circular 309 are unreasonable, in that the amount earned by your petitioner in the transportation of the articles covered by 309, between the points therein prescribed, would be less than the cost of service," fails to raise an issue of fact; since, conceding the truth of the averment, for the reasons given above, the rate therein prescribed is not alleged to be unreasonable as a part of the whole body of rates prescribed by the commission.

7. In the petition for mandamus, after alleging the facts upon which the plaintiff predicated its right to the writ of mandamus, it was alleged in paragraph 5 that "the action of the defendant in refusing to transport the articles offered for shipment, on the tender of the rates prescribed by law, is arbitrary, illegal, and greatly to the injury and damage of petitioner, its property and business." The answer denied the fifth paragraph. This paragraph stated only a conclusion of law from the pleaded facts, and its denial in the answer did not raise an issue of fact.

8. It is clear that the pendency of the suit of the Palmer Hardware Company against the Railroad Commission of Georgia, the Southern Railway, et al., in Chatham superior court, and the continuance of the restraining order granted therein, presents no sufficient answer to the allegations and prayers of the plaintiff's petition. In the first place, the court in that case was without jurisdiction. *Railroad Commission* v. *Palmer Hardware Co.,* 124 *Ga.* 633. Secondly, the plaintiff was not a party to that suit. And lastly, the temporary restraining order operated against the commission putting into effect circulars 305 and 306, and could not affect the subsequent action of the commission in amending its schedule of rates. Reagan *v.* Farmers Loan & Trust Co., 154 U. S. 362.

9. The mandamus proceeding was instituted August 31, 1905. On January 24, 1906, on the application of the plaintiff in error, an order was issued by Judge Newman, presiding in the United States circuit court for the northern district of Georgia, temporarily restraining the railroad commission of Georgia from enforcing the rates prescribed in circular 309. The defendant in error was not a party to that case. The pendency of that suit and the present operation of the temporary injunction are set up in resistance to the application for mandamus, on the ground of comity between Fulton superior court and the circuit court of the United States for northern district of Georgia, and on the further ground that, by reason of the restraining order, circular 309 is not in force against the plaintiff in error. It can not rightly be contended that the mandamus proceeding in the State court was directly enjoined by the United States court, since no writ of injunction shall be granted by a court of the United States to stay proceedings in any court of a State, except in matters of bankruptcy. U. S. Rev. Stat. § 720; United States *v.* Parkhurst Co., 176 U. S. 317. It is begging the question to insist that an indirect result may be obtained in the same case where the prohibition of that result is expressly declared by law. Besides, at the time the plaintiff had its cause of action, there was no legal obstacle to its resort to the remedy of mandamus; and it would be a solecism to say that the plaintiff's action should be aborted because subsequently the defendant in another forum may choose to litigate with other parties about the same subject-matter.

It is also urged that the temporary injunction issued by Judge Newman on a bill praying to vacate circular 309, as unreasonable, confiscatory, and void, would at least cast some doubt on the right of the shipper to enforce by mandamus the rate prescribed by the circular. In such an event, it is urged that the court would not grant the writ of mandamus. Whatever may have been the conditions imposed by the common law, before the writ of mandamus should issue, they would not apply to the present case, because the plaintiff's case is not founded on the common law, but is squarely planted on a statute. As explained in a preceding division of this opinion, the plaintiff was entitled to the remedy of mandamus, if it brought the case within the provisions of the Civil Code, §4869.

Finally, from the foregoing conclusions we hold that there was no error in making the rule absolute.

> *Judgment affirmed. All the Justices concur.*