### NEW YORK MUT. GASLIGHT CO. v. NEWTON et al.
### and eight other cases.

(District Court, S. D. New York. November 26, 1920.)

Nos. 16—110, 16—115, 16—148, 16—311 to 16—314, 17—323, 17—401.

Gas ☞14 (1)—Enforcement of statutory rate may be restrained as confiscatory, and temporary rate fixed.

    On a finding in suits by gas companies that, owing to changed conditions, the statutes of New York fixing the sale price of gas furnished by complainants to private consumers had become confiscatory, and the granting of preliminary injunctions restraining their enforcement, complainants permitted to collect a charge of $1.10 per 1,000 feet for gas so furnished until final hearing or the further order of the court, on depositing the difference between the statutory rates and the rate so collected in court, or at their option giving security for its payment when ordered by the court.

In Equity. Separate suits by the New York Mutual Gaslight Company, by the Standard Gaslight Company of the City of New York, by the Northern Union Gas Company, by the Central Union Gas Company, by the New Amsterdam Gas Company, and by the East River Gas Company of Long Island City against Charles D. Newton and others, and by the Brooklyn Union Gas Company, by the Newtown Gas Company and by the Flatbush Gas Company against Lewis Nixon and others. Order fixing gas rates pendente lite.

Motions for injunctions pendente lite, and for modification of the status resulting from injunction orders heretofore entered, in nine suits, all asking a declaration by final decree that the statutes of the state of New York, severally fixing the sale price of gas sold by plaintiffs to private consumers, have by changed conditions become confiscatory, and therefore unconstitutional, under the Fourteenth Amendment of the Constitution of the United States. The Brooklyn Union obtained a preliminary declaration to that effect by an order entered February 25, 1920, and subsequently modified by further order entered March 8, 1920. The Newtown and Flatbush Companies (which may be hereafter spoken of as the Brooklyn Union subsidiaries) have never before applied for similar relief. The remaining six plaintiffs (which may be here-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

after spoken of as the Consolidated Gas Company's subsidiaries) severally obtained similar preliminary relief on June 28, 1920, on which date the consolidated Gas Company itself was granted a preliminary injunction, which, however, has become merged in final decree entered on August 11, 1920.

Shearman & Sterling, of New York City (William L. Ransom, of New York City, of counsel), for plaintiffs Consolidated subsidiaries.

Cullen & Dykman, of Brooklyn (William N. Dykman, of Brooklyn, of counsel), for plaintiffs Brooklyn Union Gas Co., and subsidiaries.

Wilber W. Chambers, of New York City, for defendant Newton.

Ely Neumann and Edward M. Deegan, both of New York City, for defendant Nixon.

John P. O'Brien, of New York City (J. P. Donnelly, of counsel), for defendants district attorneys of New York and Kings counties.

Francis Martin, of New York City, district attorney of Bronx county, pro se.

Before WARD, and HOUGH, Circuit Judges, and MAYER, District Judge, sitting pursuant to section 266 of the Judicial Code.

PER CURIAM. We have previously held, in granting the orders above enumerated, that all these plaintiffs (except the Brooklyn subsidiaries) are not now, and so far as can reasonably be foreseen will not be, able in the future to manufacture and sell gas at the statutory rate, except at an actual loss.

We remain of that opinion, and after considering the evidence now submitted, and taking notice of the result of the final hearing in the case of the Consolidated Gas Company, we are now of opinion that none of these nine plaintiffs can make or produce and distribute gas to private consumers for less than, or close to, $1 per 1,000 cubic feet. Indeed, we are convinced that some of them must expend at present in order to make and distribute gas, slightly more than $1 per unit.

How much more than the bare cost of manufacture and distribution should be allowed pending final decree and the action of the rate-making authorities is a question necessarily dependent upon the establishment of a rate base; i. e., the ascertainment of the capital actually invested in making and distributing gas which costs the maker approximately $1 per unit.

This is a question incapable of determination at present; nothing more than an estimate can be made, and we do not feel called upon to intimate any opinion either as to the probable amount of capital so invested or of the proper rate of return or reward thereon, other than as follows: We think it plain that, at any rate of return ultimately declared proper, a profit of 10 cents per unit is reasonable. We therefore find that, pending this suit and until final decree, or the further order of the court, the plaintiffs and all of them should, from December 1, 1920, be permitted, as a condition for the maintaining of injunctions, to charge to and collect from private consumers not exceeding $1.10 per 1,000 cubic feet of gas sold.

The second branch of these motions is that, instead of a deposit with a special master of all excess over the statutory rates, plaintiffs be severally given the option to retain the amounts paid by private

consumers, and apply the same to the necessities of their business upon security being given.

We are convinced that, considering the prevailing rates for money in this community, it is not advisable longer to retain the excess over statutory rates, where it can earn no more than the interest usually allowed by banks and trust companies on such deposits. The plaintiffs therefore (other than the Brooklyn Union subsidiaries) may severally enter orders as follows:

1. On and after December 1, 1920, and during the pendency of this suit, or until the further order of the court, plaintiff is authorized and permitted to charge to and collect from private consumers of gas a price not exceeding $1.10 per 1,000 cubic feet, anything in previous orders of the court to the contrary notwithstanding.

2. The moneys now on deposit to the credit of this cause and in charge of Richard Welling, Esq., special master, may, as soon as is convenient after the entry of this order, be paid over, both as to principal and accrued interest, by such special master to plaintiff herein upon its receipt, but on the following conditions:

3. There shall first be paid to the said Richard Welling on account of his services as special master a sum to be fixed in the order to be entered hereunder.

4. In respect of the moneys so paid by said special master to the plaintiff, said plaintiff on receipt thereof shall give a bond or bonds with sureties to be approved by any judge of the District Court for the Southern District of New York, conditioned to pay in the aggregate the amount received, together with interest thereon at 6 per cent. from December 1, 1920, on the demand of said special master or any successor appointed in his place, and further conditioned, in the event of such payment not being made within ten days after such demand, that judgment shall be forthwith entered both against the plaintiff and the surety or sureties as by confession for the amount secured by said bond with interest as aforesaid and costs of entry. No one surety shall give bond for more than $500,000.

5. On the 15th of January, 1921, and on the 15th of each month thereafter during the pendency of this suit, or until the further order of the court, the plaintiff shall report to the special master herein the amount of the difference between the statutory rate and $1.10 per 1,000 cubic feet collected by it, together with a verified declaration that the said amount is all that has been collected during the preceding month; and the said special master shall file the same in the clerk's office in these suits.

6. Contemporaneously with the report and statement hereinabove required on the 15th of each month, beginning January 15, 1921, the plaintiff may at its option (a) pay in cash the amount so reported to said special master to be by him retained and deposited on the terms of the orders heretofore entered and so held until final decree or the further order of the court; (b) execute and deliver to the said special master a bond with surety or sureties for the payment of the amount stated in said report with 6 per cent. interest annually from date of report to said special master, when and as required by the court and

on demand, substantially in the form hereinabove directed in respect of the moneys now on deposit with said special master; or (c) it may deposit with the special master bonds. of the United States, and/or bonds in which savings banks are authorized to invest under the laws of the state of New York, or both, of a value at the market price, plus accrued interest, equal to at least 103 per cent. of the amount so reported month by month. And the special master is hereby required to demand and exact from the plaintiff, as each month's report is made and bonds as aforesaid deposited, further and additional bonds by way of security, to the end that there shall always be on hand in the master's possession bonds equaling at the market, including interest, a value equal to 103 per cent. of all the excess collection so reported, together with interest at 6 per cent. on such excess to a date one month later than the date of such demand.

To the extent above indicated plaintiff's motions are severally granted; and in the cases of the Brooklyn Union subsidiaries similar orders may be entered, including, however, the declaration (not heretofore made) that chapter 125 of the Laws of New York of 1906 has become and is at the present time confiscatory; and defendants are enjoined, until the further order of this court, from enforcing the same.

The terms of the orders heretofore entered shall continue to cover collections down to and including the month of November, 1920, with the additional privilege in plaintiffs of substituting for the deposits surety bonds and/or bonds of the United States, and/or bonds in which savings banks are authorized to invest under the laws of New York. The orders now to be entered will be effective thereafter and until final decree or the further order of the court.