THE ATLANTA STREET RAILROAD COMPANY *vs*. THE CITY OF ATLANTA *et al*.

1. If one claiming a right under a written contract does not leave the contract to stand for itself, but introduces parol testimony to explain the meaning of the terms, he cannot complain that the court submits to the jury the question so raised.

2. The verdict in this case is not void for uncertainty.

3. Under a contract between a municipal corporation and a street railroad company, that "the road, rolling and live stock of said company" should be exempted from taxation, stables, shops, houses for storage of lumber, and other like conveniences were not exempted.

(a.) The word "road" is not a technical word, requiring explanation by the testimony of experts; nor does it alter the case that the president of the road and another witness interested therein, tes-

tified that, at the time the franchise was granted, they understood it to include such appurtenances or conveniences as those stated above.

Municipal corporations. Tax. Railroads. Contracts. Verdict. Practice in the Superior Court. Before Judge BUCHANAN. Fulton Superior Court. March Term, 1880.

Reported in thc decision.

CANDLER & THOMPSON; B. H. HILL & SON, for plaintiff in error, cited 6 Watts & S., 378; 8 *Ib.*, 334; 3 Zabriskie, 510; 5 Barr., 70; 4 Metc., 564; 37 *Ga.*, 644; 44 *Ib.*, 624, 646; Code, §2754; Cooley on Taxation, 151; 6 Penn. St., 70; 11 *Ib.*, 202; 15 *Ib.*, 351; Pierce on Am. Rwy. Law, 50; 21 Grat., 604. On the verdict, Code, §§3559, 2755–2757.

W. T. NEWMAN, for defendants, cited, acts 1865–6, p. 201; City Code of 1879, §563; Cooley on Taxation, 146, 149, 152 and notes; Dillon ·on Mun. Corps., 616; 22 Penn. St., 499; 50 *Ga.*, 620; 9 Otto, 348; Code, §4.

JACKSON, Chief Justice.

This bill was filed in 1874, to enjoin the city of Atlanta from collecting taxes levied on a lot and stables where the mules and horses of the Atlanta Street Railroad Company are housed, and on a lot on which buildings for sheltering the cars of the company are erected. An injunction until the hearing was then granted, and the hearing had in 1880, when a verdict and decree were rendered to the effect that the property was subject to taxation. A motion was made to set aside the verdict and award a new trial, on the grounds therein set out, which was overruled, and the street railroad company excepted.

The exemption from taxation was claimed under the following contract: "The road, rolling and live stock of said company are hereby exempted from taxation for the

term of fifty years," and the controlling question is, do these words cover the two lots and tenements thereon, as part and parcel of the road?

1. The court submitted that question on the paper itself, and parol evidence in relation to what the term "road" embraced, to the jury; and one ground of the motion is, that the court erred therein. The writing not being left to stand for construction by itself, we see no error in leaving it with the other testimony thereon for the jury. It did not hurt, however, even if error, in the view we take of the case.

2. It is also said that the verdict is void for uncertainty. It is as follows.: "We, the jury, find and decree as follows: That the land immediately occupied by the track of said street railroad company is not subject to taxation by defendants, and we further decree that the balance of the property upon which said *fi. fa.* is levied is subject to taxation by defendants, and that the injunction be dissolved and the *fi. fa.* be allowed to proceed against the balance of the property."

Whilst this verdict might have been clearer, we do not think it so uncertain as to be void. It means that the property of this company which is invested in its road-bed, whereon its cars run for the convenience of the public, through the streets of the city, is not subject to be taxed by the city, but that these improvements which are erected for stables and shelter, are so liable. In other words, that the great investment which has been made by the company, and the value of it, shall not be taxed, as the property of other persons is taxed, according to valuation thereof, but that these two items of property—these two lots with all the improvements thereon, except the mere road-bed under one of them, are liable to be taxed like all other city property, according to its value. When we consider what is levied on, the verdict is entirely clear. These two lots are levied on, and the verdict exempts the tracks which take the cars in and out, and on which they

stand at night, and subjects the rest of the lots.    And the
decree of the chancellor follows this verdict, so under-
stood and interpreted.

3. The other grounds, when analyzed, present but the
one controlling question first propounded, and that·is,
are these two lots exempt from taxation under a proper
legal construction of the city's contract with this com-
pany, in the light of the oral testimony bearing upon it?

The record shows that there is a blacksmith shop to
shoe the mules and for other kindred purposes, and tene-
ments for some of the hands employed by the company,
and places for the storage of ties or stringers to repair the
line of road from time to time, and hospital for sick mules
and other like conveniences for the company on these
two lots.    It is also in evidence that for some time the
cars remained standing, when not in use, on the tracks
whereon they ran for public convenience, and that the
city notified the company that they must not so remain,
and thus constrained them to purchase and build or rent
places off the streets, and sold the company one of the
lots.    It is also proven by the president of the road and
another witness largely interested therein when the en-
terprise was commenced, that they understood the term
"road" to embrace these or such places as these,
and that they considered themselves experts, and such
places should be embraced in the technical meaning of
"road" as applied to street railroad companies.

These are substantially the facts which the court and
jury had before them on the trial of this important·case.
Let us first assume that the plaintiff in error is right in
the point that the court should have construed the con-
tract or agreement without reference to *aliunde* testi-
mony, then what does the exemption embrace?

It will be observed that the words of exemption are
"road, rolling and live stock."    All exemptions from lia-
bility to taxation are construed strictly.    Without refer-
ence to other states, or to elementary works, it is enough

v 66—7

to say that this court, in the well considered case of *The Mayor and Council of Macon vs. The Central Railroad Company*, 50 *Ga.*, 620, ruled this principle, after holding up the case for a term for further and full investigation. And it ought to be so held. The power to tax is the life-blood of the state and of the governing communities, county and municipal, which are the limbs of the state, essential to the well-being of the entire body politic—indeed to its healthful action and the preservation of life. And the supreme court of the Union, as of this state, so rule, and the whole current of the law flows in the same channel with scarcely a ripple in its course.

Construing these words strictly, then what is their obvious import?

It is not pretended that these lots and tenements are either live stock or rolling stock. Does the word "road" include them? That word stands naked. It has not even the usual habiliments of "appurtenances." If it had, there might be some plausibility in the argument that it included as *appurtenant* these habitations, hospitals and storehouses for the hands, the horses and cars of the company, and these workshops for repletion and repair; but, even then, necessaries, not mere conveniences, would pass the ordeal of escape from taxation.

."*Inclusio unius, exclusio alterius,*" is a rule as old as the civil law of the Romans, and as sensible as it is venerable. The very fact that "live stock" and "rolling stock" are included, excludes the idea that stock invested in lots and tenements were meant to be exempt, though not included in words. If "road" meant the whole capital stock of the company, incidental to its operations, why does the exemption embrace in express words live stock and rolling stock? Those are absolutely necessary to operate the work proposed. Without rolling and live stock—cars and animals to draw them—there can be no street railway; for steam is inapplicable and was not thought of as a motive power in this grant; but there

can be such a railway working and accomplishing the purpose of the franchise, without stables or shelters belonging to the company.

The word "road," therefore, cannot be construed to mean "capital stock," because part of that capital stock, to-wit: that which is invested in live stock and rolling stock is expressly exempted, unless no meaning whatever be given to those words, and they were unnecessary tautology in the exempting clause.

We hold, then, that the absence of the word "appurtenances" and the inclusion of the words "live stock and rolling stock," excludes the idea that *all* the capital stock was exempted.

And, as said before, even if "appurtenances" had been added to the word "road," the authorities cited by the plaintiff in error make that word include not mere conveniences, but *necessaries ;* and it can hardly be seriously urged that these tenements are necessaries—that is, so essential that the road could not be operated with success without them.

If, however, the oral testimony be added to the writing in order to illustrate its meaning, we find really less difficulty in construing the agreement. The testimony of Messrs Peters and Adair is not conclusive as to the meaning of "road" in the contract. It takes two to make a bargain. Their understanding is of little consequence unless the other party also understood it. Nor is "road" a technical word, but should be construed in its ordinary signification ; and if it were, neither of the witnesses seem to have been very expert in regard to its meaning when used in reference to street-railways—this being the first with which they were connected.

Moreover, it is in testimony that their lots and houses are used as apartments for the hands employed by the company, for blacksmith shops, for storing lumber, etc., etc., which is very convenient but not necessary for the company to own. They could very well rent stables and

shelters and did so rent stables when the cars first ran. So that even for shelter and stables they can hardly be termed necessaries for the company's work.

Resting our construction of this paper on the fundamental principle that exemption from taxation in charters and grants should be construed strictly, we cannot for the above reasons say that the court below erred in approving the meaning of this clause given it by the jury, and in upholding their verdict.

Exempting the entire road and all the capital invested therein and in the live and rolling stock thereto belonging, and only exercising the right to tax these lots and tenements, the city certainly has shown its appreciation of the public spirit and enterprise which formed this company and completed this public work. This exemption is for fifty years and enhances the value of the property, and is a full consideration for any advantage the city derives from the company independently of the income which the company derives from its road.

The verdict and decree go yet further, and exempt the road-bed on Line street leading to these lots, and the ground within them on which the track, for the accommodation and ingress and egress of the cars, is laid, which, it seems to us, extends the exemption fully as far as the words will warrant.

Judgment affirmed.