THE AUGUSTA FACTORY *v.* THE CITY COUNCIL OF AUGUSTA.

1. Whilst formerly the State could by contract restrict itself in the exercise of the taxing power, a municipal corporation had no such capacity in respect to the taxing power committed to it.

2. The present case has no real complication resulting from covenant

on the part of the city, but is governed by the ordinary rule as to interlocutory injunctions. And in denying an injunction there was no abuse of discretion.

November 25, 1889.

Municipal corporations. Taxation. Contracts. Injunction. Before Judge RONEY. Richmond county. At chambers, June 29, 1889.

The Augusta Factory sought an injunction against the municipal authorities of Augusta to prevent the enforcement of an execution for municipal taxes of 1887, which was levied February 18, 1889. Briefly stated, the plaintiff's case was as follows: Although the tax ordinances for the city for the years 1882–3–4–5–6 imposed a tax on all the property of persons resident in the city, a large part thereof known as the 5th ward was exempted from the operation of those ordinances, though represented in the city council, under the protection of the city government, receiving benefits from the city treasury in the employment of police and in maintaining and lighting streets, etc., and though the citizens thereof voted in all the municipal elections held after January 1st, 1883, just as other citizens; and therefore the ordinances were void and furnished no warrant to the city to levy and collect taxes. Even if legal on their face, the action of the city council in collecting taxes for 1883–4–5–6–7 was in wilful disregard thereof, in that no returns were received or asked of persons resident or property situated in said 5th ward, and no taxes were collected or required of said persons or property, such omission being intentional. Not only are such ordinances illegal for the imposition of taxes by virtue of the constitution of the State, but they violate a contract between plaintiff and the city council made under the following circumstances: The Augusta Canal Co., a corporation, contracted, on January 7, 1850, to furnish to the Augusta Manufacturing Co., a corporation,

certain water for its mills. The city council guaranteed, in writing, the undertaking of the canal company so far as concerned the supply of water to one mill, mentioned as mill No. 2. About 1858, the manufacturing company, alleging that the canal company had failed to supply the water according to contract, brought suit against the city council on its guaranty for large sums as damages. This litigation was compromised, the city council buying the property of the manufacturing company at a price agreed on. On July 1, 1858, it sold this property to Edward Thomas and others, at the same time making a contract with them that, for the ten years next ensuing that date, no tax of any kind should be imposed on the property, capital or privileges of Thomas *et al.* employed as therein contemplated, nor after the expiration of that period should any tax be imposed which should in effect operate as special legislation against the interest of Thomas *et al.*, their heirs, legal representatives or assigns, and compel the payment by them of a higher rate of taxation than such as might then be imposed upon property, etc., employed in other industrial pursuits of the same or similar character in Augusta. On May 11, 1860, the present plaintiff became, by purchase, the assignee of Thomas *et al.* to said property and contract. The city council, in imposing the tax sought to be enjoined, violated the contract referred to, because, for the year 1887, it did not impose any tax at all on other property and capital employed on the same or similar industrial pursuits in the city, to wit, that of the John P. King Manufacturing Co., the Sibley Manufacturing Co., the Algernon Mill, the Shamrock Mill, and other property and capital. The city council imposed a tax on plaintiff for 1886, which also was in violation of the contract mentioned; and plaintiff paid the sum required, but under protest.

The answers contained the following allegations: All property subject to taxation is required to pay the same by the city ordinances. These were not intentionally made to exempt any property or impose burdens on parts only of the city. The tax sought to be collected from plaintiff is not illegal. The city ordinances violated no contract between the city and plaintiff. Said contract is void under the constitution of 1877, and no longer binding on the city council; but even if still so, it is nothing else than the expression of the law that all taxation shall be uniform upon the same class of subjects and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax. The tax ordinances have followed the law and imposed the same tax upon all property subject to be taxed. Plaintiff was freed from all charges and burdens of the municipal government for the period of ten years until July 1, 1868. In May, 1873, under provision of the act of 1872, plaintiff applied for and obtained an exemption from taxation on $235,000 of its capital stock for ten years until April, 1883, and on $350,000 of its capital stock for ten years after April, 1875; it also secured from the city council, by change in the terms of its water contract, a reduction of water rent. The taxes plaintiff paid for 1886 were not paid under protest, although at the time of making the return, February 5, 1886, plaintiff's president, in writing, called attention of the city to the clause of the constitution of 1877, that all taxation shall be uniform upon the same class of subjects, etc., and gave notice that unless that clause was complied with, his company would not pay any taxes that might be required by the city; and although when it paid the taxes, April 30, 1886, it took a receipt with "paid under protest" written across its face by the collector, and made a written

v 83-47

statement to the effect that it ought not to be required to make said payment, that the tax assessed was illegal, that the payment was made to save its property from being taken in execution and sold, and that the city intentionally omitted to impose or collect any tax upon other property of the same class. If this were a protest, it was of no avail to plaintiff, because it voluntarily paid the tax five months before the city was authorized under the ordinance of force to issue a *fi. fa.* or enforce its collection; but this tax was legally assessed and collected, and the tax for 1887 was assessed and levied in compliance with law. The city sheriff (the receiver of tax-returns) required no return of property in the 5th ward of the city for the years 1883-4, 5-6-7, because he had no legal authority so to do, the property not being subject to municipal taxation for those years under the act of the General Assembly, entitled "an act to extend the limits of the city of Augusta, to regulate taxation within said extended limits, and for other puposes," approved December 9, 1882, the 3d section of which was as follows: "That none of the real estate lying, being and situated within the boundaries set forth in section 1st of this act, nor the personal property owned or represented by actual residents within said boundaries, shall be subject to taxation by the municipal authorities of the city of Augusta until December 31, 1887." The part of the city referred to was built up by mills and their operatives. Some months before the passage of the act of 1882, it was learned that steps were being taken by the mill representatives and others to have said territory organized into a separate municipality, so as not to be subject to city taxation or become liable for the burdens already incurred by the city of Augusta, which were then represented in part by a bonded debt of about $2,000,000 with a semi-annual interest charge of $140,-

000, requiring a tax of seven eighths of one per cent. annually to meet the interest alone, besides a large floating debt. The officers of the city of Augusta entered into negotiations with the leading residents and property-owners in this territory, and as a result, it was finally agreed and fully understood that no property should be taxed therein until January 1, 1888, and that in the meantime, the City Council of Augusta should exercise only police supervision of that territory. All parties and the legislature recognized the justice of the claim of said residents that the principal property in said territory was mill property, which out of a total valuation of $2,645,550 represented about $2,100,000. Nearly all the land was used simply for agricultural purposes, and very little of it was ever laid into building lots. Under act of the General Assembly, approved August 27, 1872, all cotton mills in the city of Augusta proper were exempted from taxation by State or municipal authorities, the Enterprise with a capital of $500,000 being exempted from March, 1877, to March, 1887, and the plaintiff as already stated; it being insisted, for these reasons, that it would be unjust to impose municipal taxation on new enterprises organized about 1880 after much effort, and which would, if successful, add to the prosperity of the city, while other factories were exempted, except in part, until January 1, 1888. The residents of the territory referred to also insisted that separate incorporation would result in only nominal taxation for the maintenance of such government as the territory would require, and in addition, they would not become liable for any of the bonded debt of the city of Augusta nor any part of its necessary expenses. Thus the residents and mill-owners of this territory ceased efforts to organize a separate government but assented to the passage of the act of 1882, which was prepared and passed simply to carry

out the agreement made, which fact was known to the parties thereto as well as the legislature. This territory was only annexed for police supervision until January 1, 1888. No street was opened therein nor were the public roads through it improved by the municipal authorities; no water or gas mains were run into it and no provision made for furnishing it with light except by putting up a few oil lamps at road crossings; no fire apparatus was located therein other than to lend an unused hook and ladder truck, the mills furnishing real protection from fire; its residents filled none of the city offices, and the whole of the territory, numerically entitled to as many as the other wards under the act of September 12, 1883 (p. 332), had only one member of council, while the four other wards had three. On January 1, 1888, this entire territory of farm lands, forests, vacant lots and small houses, mills and other property became subject to bear its part of all the municipal burdens contracted long before it became part of the city, and is annually called upon to contribute such part of the expenses of the municipal government; and these burdens are borne without many of the advantages enjoyed by the other sections of the municipality, because it will be years before such territory can have paved sidewalks, gas-lights, water, sewers and other such advantages. At the time of the passage of the act of 1882, plaintiff and other factories in Augusta were enjoying large immunities and privileges under contract between it and the city, and under acts of the legislature exempting factory property from taxation for ten years. The latter acts had been repealed, except as to existing factories, by the constitution of 1877, and plaintiff and other mills were by virtue thereof relieved from all taxes until 1888, while mills outside of the city, built after the constitution of 1877, were taxed. The intent of the legislature was, to legislate with reference to

then existing facts, and not to impose a burden on competitors already more heavily taxed than plaintiff, and therefore it did not force them into the city by unqualified annexation, but acted on all the facts herein set forth, and provided for public purposes at once, but expressly enacted that the property and residents therein should not be subject to city taxes until December 31, 1887. Before the passage of the act of 1882, the property of said territory was not subject to city tax; no debt had been contracted on the faith of expected tax revenue from it; no burden of tax-payers in the city had been increased by it; and if the legislature had not passed the act, neither the city nor the plaintiff could have complained, nor can plaintiff complain that the legislature, with the right to have refused to admit the territory for any purpose, admitted it in the interest of the city for police purposes in 1882 on condition that the property therein should not be subject to city taxes until December 31, 1887. In obedience to this act, notwithstanding the city ordinances, no return of the property or from persons therein was required for 1886 and 1887.

It was admitted that the usual tax ordinances were passed by the city council, but no returns were made by, and no taxes collected from, the Sibley, King, Algernon and Shamrock mills nor on any of the real or personal property of the 5th ward for the years 1883–1887 inclusive. That the plaintiff became, by purchase, the assignee of Thomas et al. was admitted, subject to the right to set up that the contract is not now valid, and that the rights claimed under it did not pass by assignment or otherwise to plaintiff. It was also admitted that policemen were on duty in the territory brought into the city by the act of 1882; that the city recorder took jurisdiction of the violation of city ordinances in that territory; that it was represented in the

city council by one member; and that citizens therein voted in all city elections. It was shown that during the years 1886 and 1887 the value of property in the 5th ward was less than $2,645,550; that for 1886 the value of taxable property in the city exclusive of the new territory was $16,245,364, and for 1887 was $16,148,121; that the rate of taxation for those two years was $1.62½; and that the ordinances of 1885 and 1886 under which the tax complained of was levied, were substantially the same as had been annually passed by the city council since the adoption of the present constitution, and under which all taxes were levied and collected for those years. The tax ordinances were introduced. They provided for the taxing of all real and personal property within the city not exempt by the constitution and laws of the State.

The injunction was refused, and plaintiff excepted.

J. B. CUMMING and BRYAN CUMMING, for plaintiff.

J. S. DAVIDSON and FOSTER & LAMAR, for defendant.

BLECKLEY, Chief Justice.

The code, §3220, declares that the granting and continuing of injunctions must always rest in the sound discretion of the judge, according to the circumstances of each case. The judge having refused an injunction in the present case, the sole question for our determination is, whether in doing so he failed to exercise a sound discretion according to the circumstances. It was insisted on the argument that, by the element of contract, the case was taken out of the general rule. The contract referred to was a covenant on the part of the city made in July, 1858, with the then owner of the property now taxed, or some of it, not to exercise the taxing power with reference to this property in a way to burden it more than other property of a like kind in the city. If the covenant is to be regarded as an at-

tempt to limit or modify the taxing power of the municipality, we think that in the absence of express legislative authority to enter into it, the city had no power to make such a covenant.    Whilst according to the decisions of the Supreme Court of the United States, the State itself could surrender or limit the taxing power in 1858, as to any specific property, we think it has never been held that a municipal corporation could exercise a like power of contracting in the absence of statutory permission.    Even the granting of exemptions from taxation by merely forbearing to exercise the taxing power as to some property, in ordinances imposing taxes on other property, is matter of doubtful validity. Cooley Tax. 200 ; Desty Tax. 466.

Such ordinances were, however, allowable in Georgia prior to the constitution of 1877.    *Mayor of Athens* v. *Long*, 54 *Ga.* 330; *Waring* v. *Mayor of Savannah*, 60 *Ga.* 93.    But we apprehend it never was within the power of a city to bind itself by contract either to forbear to impose taxes, or to impose them under certain given limitations, or on certain conditions.    In other words, we think a municipal government could not hedge in its legislative power by contract.    State *v.* Hannibal, etc. R., 75 Mo. 208 ; Mack *v.* Jones, 21 N. H. 393.

It was conceded in the argument that neither by the charter of Augusta, nor by any of the amendments thereto, has any express power ever been conferred on that city to limit or regulate its taxing power by entering into any covenant touching its exercise.    In *Atlanta Street R. R.* v. *Atlanta*, 66 *Ga.* 104, the power to exempt was expressly conferred on the city by the charter of the railroad company.    See Acts of 1865–6, p. 201.

We have said thus much to eliminate the contract element from the case; though were it to remain in it, we see not how it could or ought to vary the decision

proper to be made on the application for an interlocutory injunction, the duty now of the city council being to levy and collect taxes upon the basis prescribed by the constitution of 1877, which is certainly as favorable to the plaintiff as that laid down in the alleged covenant. Where legal duties and rights coincide precisely with the stipulations of a contract, and the proceeding involves the enforcement of such legal rights and duties, the contract stipulations become wholly immaterial. In any view of the subject, therefore, the case before us is one depending on the ordinary rules of interlocutory injunctions against the collection of city taxes due for past years. As there is no attack upon the validity of the ordinance imposing the taxes, but complaint is made only of the non-enforcement of the ordinance against *other* property alleged to be subject to taxation under it, and as there has been no tender of any part of the unpaid tax assessed upon the property of the plaintiff, we are unable to perceive any abuse of discretion by the judge in denying the injunction.

*Judgment affirmed.*