WASHINGTON NATIONAL INSURANCE COMPANY *v.* MAYOR AND ALDERMEN OF SAVANNAH.

No. 14523. JUNE 10, 1943.

*Gilbert E. Johnson,* for plaintiff.

*Spence M. Grayson* and *Joseph C. Hester,* for defendant.

REID, Chief Justice. Washington National Insurance Company filed its petition in equity against the Mayor and Aldermen of the City of Savannah, seeking injunction against enforcement of certain executions which had been issued by the municipality against the insurance company. This course was taken because, as contended, the plaintiff had no adequate remedy at law, since there was no provision in the defendant's municipal charter whereby an affidavit of illegality may be filed in defense to the executions. The executions had been issued against the plaintiff for several different years, in pursuance of a municipal ordinance providing for a license or occupational tax upon various businesses, a pertinent part

of which is as follows: "Insurance Companies.· Every life and health and accident insurance company or association doing business, whether directly or through an agency, or through a broker, or subagent, one hundred and fifty dollars ($150) for each and every agency or broker or subagent." The validity of the ordinance is not attacked by the plaintiff, but it is contended that it has duly paid its license or occupational tax levied by this ordinance for each of the years that it has done business in the City of Savannah. The defendant by its answer admitted that the plaintiff had paid, for each year it had done business in the city, one such license or occupational tax, but contended that it was liable for each of the years involved, for an additional $150 tax or license fee, for the reason that, as substantially stated, the plaintiff company did business in the city through two separate and distinct agencies. Upon interlocutory hearing the judge heard evidence which on the controlling question is not in any substantial dispute. The facts are largely agreed to, and any controversy in respect to them exists only in the conclusions which might be drawn from what is admitted to be true.

The evidence and admissions make substantially the following case: The plaintiff, a non-resident insurance company with its home office in Chicago, Illinois, has been for some years doing a general life and industrial insurance business in the City of Savannah, and about 1931 acquired by purchase "all of the monthly premium sick and accident business" from the American National Insurance Company. Under the record it appears that the plaintiff thereafter maintained the agency that it had thus purchased, and operated it as a place of business in the Blun Building in Savannah. Several different agents worked out of, through, and reported to this established agency which transacted a general insurance business, writing policies of various kinds, receiving premiums, and generally serving policyholders whose business was written through this agency in behalf of the plaintiff company. In addition to this business activity carried on by the plaintiff during the years involved, it had another agent, James A. Godbee, whose duties were "to solicit monthly-premium industrial insurance, sick and accident." He collected the first or initial premiums on such policies, and wrote no other class of insurance for the plaintiff. He apparently had nothing to do with these policies after they were

once issued, and all subsequent premiums on such policies were paid by the policyholders to the Industrial Savings and Loan Company, a local banking institution in Savannah, by which they were remitted, less the bank's commission for collection, to the plaintiff company. None of these transactions have any connection with the business done by the agency in the Blun Building, nor does Godbee have any connection with the agency in the Blun Building. He does not report to such agency or act in any way under its direction, his activities, according to the record, being wholly unrelated to the business done by that agency. The evidence shows that his activities (although it does not appear that he has any fixed office or place of doing business) are under the supervision of an agent of the company located in Atlanta, and that he reports and is accountable only to such Atlanta agent or to the company's home office. The plaintiff offered evidence to the general effect that in the enforcement of this ordinance the city did not exact the payment from any other insurance company of more than one license or occupational tax, regardless of the number of agents used by the company. This evidence was not objected to, and in all instances applied to cases where an insurance company had one "agency" but several soliciting agents operating under or through such "agency." The judge denied an injunction, and the plaintiff excepted.

■ "The rule that this court will not interfere with the discretion of the trial judge in granting or refusing an injunction where the evidence is conflicting does not apply when the question to be decided by the trial judge is one of law." *Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* 118 *Ga.* 255 (45 S. E. 267); *Wilkins* v. *Savannah,* 152 *Ga.* 638 (111 S. E. 42). In view of these and similar rulings, and since from what appears in the statement of facts there is no real dispute between the parties except as to the proper application of the municipal ordinance involved, the case must be determined as one of law, and not as one involving the discretion of the trial judge.

■ The tax is laid upon the *insurance company* at "one hundred and fifty dollars ($150) for each and every agency or broker or subagent." The tax upon the agency, referring to the business transacted through the office in the Blun Building, has been paid, and is not here involved. The question arises over the activities of

agent Godbee and the business transacted by him. It is not contended that he is a broker or subagent. It is not shown that he has any office or fixed place of doing business, but it is shown that his activities are wholly disconnected with the "agency" on which the tax has been paid. The word "agency," both in law and as used in every-day affairs, may have various meanings. It may refer, and perhaps most often does, to that relation "created by express or implied contract or by law, whereby one party delegates the transaction of some lawful business with more or less *discretionary* power to another, who undertakes to manage the affair and render to him an account thereof." *Burkhalter* v. *Ford Motor Co.,* 29 *Ga. App.* 592, 599 (116 S. E. 333), citing 1 Am. & Eng. Enc. Law, 937; *Atlanta Accident Asso.* v. *Bragg,* 102 *Ga.* 748 (29 S. E. 706). The American Law Institute, in defining the word "agency," adopted the almost universally recognized definition as follows: "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement, Agency, 7, § 1. See also 2 C. J. S. § 1 (1). Or the word may be used to indicate a place of business, or place of transacting business. See 2 Words and Phrases, 722; *Atlanta Accident Asso.* v. *Bragg,* supra; *Central Georgia Power Co.* v. *Parnell,* 11 *Ga. App.* 779, 780 (76 S. E. 157); *Padrick* v. *Kiser Co.,* 33 *Ga. App.* 15, 18 (124 S. E. 901); *Tuggle* v. *Enterprise Lumber Co.,* 123 *Ga.* 480 (51 S. E. 433); 2 C. J. S. § 1 (2). In popular use it may also have more than one meaning. See Webster's New International Dictionary where, among other things, it is treated as synonymous with "instrumentality." Thus it may be used as indicating a means employed for the accomplishment of a particular purpose. Of course we must keep in mind in the present case that the word is here used with reference to an insurance company. After careful study and without finding any exact precedent, we have concluded that since the company adopted two distinct methods of transacting its business, the ordinance in its terms embraces each of them as separate agencies upon which the occupational tax is laid. This is not such a case as *Wofford Oil Co.* v. *Boston,* 170 *Ga.* 624 (154 S. E. 145), where the city ordinance was attacked for the reason that various component and incident parts of the business were separated and taxed separately,

and where it was held: "Where a municipality is simply given the power to impose a license tax upon a business, it can not divide such business into its constituent elements, parts, or incidents, and levy a separate tax on each or any element, part, or incident thereof." That principle is recognized, but does not apply in the instant case where the real contention is not over the validity of the ordinance, but where under the facts it must be said that plaintiff is conducting its business through two agencies instead of one.

We give no special effect to the testimony that in the enforcement of the ordinance other insurance companies were required to pay only one occupational tax, no matter how many agents they might employ. In the first place, as pointed out by Chief Justice Bleckley in *Augusta Factory* v. *Augusta,* 83 *Ga.* 734, 744 (10 S. E. 359), if the plaintiff is liable for the tax, it is no defense that it is not enforced against others. It might also be pointed out that in the present case it does not appear that any other company, as to which testimony was given, transacted its business in a manner similar to the one involved.

It is strongly urged, that, since the plaintiff under the ordinance is taxed for doing business in the city, Godbee should be regarded as merely another agent just as if he reported to the Blun Building agency; but let us suppose that the company had no Blun Building agency but instead operated exclusively through its agent Godbee in the manner described in the record, we hardly think it could be contended that in such a case it would not come under the terms and provisions of the ordinance. Under the rules stated above the judge did not err in refusing an injunction.

*Judgment affirmed. All the Justices concur.*