SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY *v.* GEORGIA PUBLIC SERVICE COMMISSION *et al.*

GEORGIA HOTEL ASSOCIATION *v.* SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY.

GEORGIA PUBLIC SERVICE COMMISSION *v.* SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY.

Nos. 16241, 16248, 16249.  July 15, 1948.  Rehearing denied July 28, 1948.

834

*Smith, Kilpatrick, Cody, Roger & McClatchey, E. D. Smith Jr., James A. Branch, E. W. Smith, John T. Goree,* and *John A. Boykin Jr.,* for Southern Bell Telephone &c. Co.

*Eugene Cook, Attorney-General, Claude Shaw* and *Wright Lipford, Assistant Attorneys-General,* for Georgia Public Service Commission.

*Andrew A. Smith* and *Alfredda Wilkerson,* for Georgia Hotel Association.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) ■ Headnotes 1, 2, 3, and 4 require no elaboration.

■ The Georgia Public Service Commission is a constitutional board. Article 4, section 4, paragraph 3 (Code, Ann. Supp.,

§ 2-2703). The law vests in this board the exclusive authority to determine and fix what are just and reasonable rates. Code, § 93-309. The function of making telephone rates is legislative in nature, and such rates can not be judicially fixed by courts. 43 Am. Jur. 634, § 83; Central Kentucky &c. Co. *v.* Railroad Comm., 290 U. S. 264 (2) (54 Sup. Ct. 154, 78 L. ed. 307).

■ But where in a case properly brought it is shown that the rates fixed by the commission are confiscatory and protection by a court of equity is sought to prevent a violation of the due-process provisions of the State and Federal Constitutions, the court is required to adjudicate the question and to render a judgment that will afford the complainant full protection of its constitutional rights. Both the courts of this State and of the United States have accepted jurisdiction and rendered judgments in rate cases where it was alleged that constitutional rights were imperiled. *Southern Ry. Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207 (57 S. E. 429); *City of Atlanta* v. *Atlanta Gas Light Co.,* 149 *Ga.* 405 (100 S. E. 439); *City of Atlanta* v. *Georgia Ry. & Power Co.,* 149 *Ga.* 411 (100 S. E. 442); *Georgia Ry. & Power Co.* v. *Decatur,* 152 *Ga.* 143 (108 S. E. 615); *Georgia Public Service Comm.* v. *A. & W. P. R. Co.,* 164 *Ga.* 822 (139 S. E. 725); *Georgia Public Service Comm.* v. *Georgia Power Co.,* 182 *Ga.* 706 (186 S. E. 839); Pacific Tel. &c Co. *v.* Kuykendall, 265 U. S. 196 (44 Sup. Ct. 553, 68 L. ed. 975); McCardle *v.* Indianapolis Co., 272 U. S. 400 (47 Sup. Ct. 144, 71 L. ed. 316); West Ohio Gas Co. *v.* Comm., 294 U. S. 63 (55 Sup. Ct. 316, 79 L. ed. 761). While it was held in Market Street R. Co. *v.* Comm., 324 U. S. 548 (65 Sup. Ct. 770, 89 L. ed. 1171), that the utility company could not be said to suffer injury if the rate is fixed for an experimental period which will probably produce a fair return, and while it was also held in New York *v.* United States, 331 U. S. 284 (67 Sup. Ct. 1207, 91 L. ed. 1492), that where the result·of an order is not clearly confiscatory but its precise effect must await operation under it, the court has refused to set it aside despite grave doubts as to its consequences, citing City of Knoxville *v.* Knoxville Water Co., 212 U. S. 1. (29 Sup. Ct. 148, 53 L. ed. 371), Wilcox *v.* Consolidated Gas Co., 212 U. S. 19 (29 Sup. Ct. 192, 53 L. ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034), Darnell *v.* Edwards, 244 U. S.

564 (37 Sup. Ct. 701, 61 L. ed. 1317), Brush Electric Co. *v.* Galveston, 262 U. S. 443 (43 Sup. Ct. 606, 67 L. ed. 1076), and St. Joseph Stock Yards Co. *v.* United States, 298 U. S. 38, 69 (56 Sup. Ct. 720, 80 L. ed. 1033), it is of the utmost importance that it be clearly noted that the situations referred to are those where the confiscation is not clearly shown, and, hence, the rule is not applied to confiscatory rates. We find no decision of any American court where it has been held that when confiscation is clearly shown the court will refuse an appeal of the injured party for a judgment protecting his constitutional right. In both City of Knoxville *v.* Knoxville Water Co., and Wilcox *v.* Consolidated Gas Co., supra, it was held that where there is a clear confiscation the court should act without hesitation. The present losses suffered as a result of confiscatory rates can not be made up in the future. Federal Power Commission *v.* Natural Gas Pipeline Co. 315 U. S. 575 (62 Sup. Ct. 736, 86 L. ed. 1037) ; Monroe Gaslight & Fuel Co. *v.* Michigan Public Utility Commission, 292 Fed. 139. But even if the law would permit the Public Service Commission of this State to establish rates at some future time for the purpose of making up losses inflicted by past confiscatory rates, there can be no assurance that such future rates would be established. If the present members should remain in office, they might refuse to establish such future rates; and since the offices are filled by election, there is no way to know what would be the attitude of the new members that may be elected in the future. In addition, it is not fair to future customers to have a rate imposed upon them for the purpose of compensating for services rendered customers in the past. Fundamental constitutional rights must not be made to depend upon speculation that some future event might occur to repair present injury inflicted, but should receive the full protection of prompt judicial action to prevent the injury.

While there appears in this record no demurrer or motion challenging the jurisdiction of a court of equity, counsel for the commissioners have argued at length in support of the contention that the judgment here under review is void, that equity has no jurisdiction since there was available to the petitioner an adequate legal remedy by the writ of mandamus under the Code, § 64-101, and that equity under § 37-121 will not take cognizance of a

plain legal right where an adequate and complete remedy is provided by law. Since the jurisdiction of the court was not questioned in any manner provided by law, it can not be raised here unless the judgment on its face shows want of jurisdiction. But even if the existence of a remedy at law would show that the court of equity was without jurisdiction to render the judgment here, mandamus, being a process to require a public official to act, is not available to control or change his action taken in the exercise of a discretion vested in him by the law, and would not be available to the petitioner. *Thomas v. Ragsdale,* 188 *Ga.* 238 (3 S. E. 2d, 567); *Ex parte Ross,* 197 *Ga.* 257 (28 S. E. 2d, 925); Interstate Commerce Commission *v.* United States *ex rel.* Campbell, 289 U. S. 385 (53 Sup. Ct. 607, 77 L. ed. 1273); United States *ex rel.* Kansas City Southern Ry. Co. *v.* Interstate Commerce Commission, 6 Fed. (2d) 692; United States *ex rel.* Delaware & Hudson R. Corporation *v.* Interstate Commerce Commission, 51 Fed. (2d) 429; United States *ex rel.* Kroger Grocery & Baking Co. *v.* Interstate Commerce Commission, 73 Fed. (2d) 948. The grievance here is, not that the Public Service Commission refuses to hear and act upon the application of the telephone company for increased rates, but that the commission, having so heard and acted thereon, has fixed rates that are confiscatory. Mandamus could merely require that the commission act again in the exercise of that discretion vested in it by law, and which is subject to errors in its conclusions. If the evidence shows that the rates ordered will result in confiscation, a court of equity has jurisdiction to render the judgment here complained of. Rates that are unjustly and unreasonably low are confiscatory.

■ It is conceded in the testimony of the commissioners, and is nowhere contradicted by the evidence in the case, that the telephone company was required to earn additional annual revenue amounting to $3,715,983 over and above that produced by rates in force before the order of January 23, 1948. The commissioners further testified that the rate order would produce approximately $1,600,000 of this required additional revenue. It was testified by the commissioners that the remainder of the additional required revenue would be obtained by suspension of expenditures of the company hereinafter listed and discussed, which

total the difference between the amount required and the amount produced by the new rates, thus converting them into receipts instead of expenses. It is at once apparent that, based upon the evidence of the defendants, the question is whether or not these items of expense are, as contended by the commissioners, not allowable in rate making and should be converted into receipts or whether they are, as contended by the telephone company, necessary and allowable expenses of operation, to be considered in computing rates and in determining the question of confiscation.

The first item in this class is $360,765 annually paid to the American Telephone & Telegraph Company under a contract for services furnished the Bell Company at a cost of 1½% of its gross receipts. The undisputed evidence shows that the petitioner obtained substantial benefits under this contract. It shows that the company realizes benefits amounting to many times the amount of this expenditure as a result of and in virtue of this contract. The evidence demanded a finding, as was held by the trial court, that this was a legitimate and proper expenditure, and that it must be considered in computing rates. Such expenditures have been held to be proper expenses. Missouri *ex rel.* Southwestern Bell Telephone Co. *v.* Public Service Commission, 262 U. S. 276 (43 Sup. Ct. 544, 67 L. ed. 247, 42 A. L. R. 1232) ; State *ex rel.* Hopkins *v.* Southwestern Bell Telephone Co., 115 Kansas 236 (223 Pac. 771) ; State *ex rel.* Pacific Tel. &c. Co. *v.* Department of Public Service, 19 Wash. 2d, 200 (142 Pac. 2d, 498). Our ruling on this item alone shows a case of confiscation in the amount of this item.

The next item in this category is $63,984, annual expenses actually paid in the rate case before the commissioners. It is contended by the commissioners that this, being a nonrecurring expense, was not a proper expenditure for consideration in computing rates. In Driscoll *v.* Edison Co., 307 U. S. 104, 120 (59 Sup. Ct. 715, 83 L. ed. 1134), it was said: "Even where the rates in effect are excessive, on a proceeding by a commission to determine reasonableness, we are of the view that the utility should be allowed its fair and proper expense for presenting its side to the commission." Such expenses were approved in West Ohio Gas Co. *v.* Comm., 294 U. S. 63 (55 Sup. Ct. 316, 79 L. ed. 761), the

court saying: "Thus viewing them, we think they must be included among the cost of operation in the computation of a fair return." However, this is, as testified by the commissioners, a non-recurring expense. It may lawfully be apportioned over a period of years by the rate-making authority, and a court, being without authority to make rates, can not allow the full amount of this item in ascertaining if confiscation exists. Therefore, while as a matter of law the commissioners would be required to treat this item as a necessary expense in computing rates, the trial court did not err in its refusal to allow this item in full in fixing the amount of revenue which the company would be allowed to collect until rates are fixed by the Public Service Commission.

The next item is $97,180, losses annually sustained in the operation of lunch rooms for the company's employees. This item was not allowable in computing the proper rates.

An item in controversy is $76,844 per annum of interest arresting accruals paid by the company into its pension trust fund. In substance the company showed by evidence that from 1913 through 1926 it maintained a pay-as-you-go pension plan for its employees. In 1941 the last of a series of steps was taken by the company to put its pension plan on a sound actuarial basis where the actual contributions thereunder would be stable and the fund actuarially sound and solvent. This involved contributing to the pension fund annually an amount equal to the actuarially determined liability for future pensions accruing during each year. Because this pension fund was started a number of years after the business had been running, the employees had accumulated substantial periods of service, and the trust fund was smaller than it would have been had it been started at the beginning of business. This deficit is designated in the evidence as a part of the unfunded reserve requirements. The basis upon which the plan rests contemplates an interest return on the trust fund annually, and the item here is a payment of the amount of interest that this unfunded reserve requirement of the trust fund would have earned had it been actually paid in by the company. Since the solvency of the plan requires interest on the reserve, and since this portion of the reserve has not been paid, failure to pay this interest thereon will ultimately allow exhaustion and

insolvency. The only evidence offered by the defendants why this expenditure should not be allowed was that the parent, American Holding Company, had determined that the fund was insufficient, and that the assessment is a charge against the rate payers of Georgia over and above current pension accruals. The defendants' evidence showed that of the total of $1,150,603 charged to Georgia operating expense in 1947 for relief and pensions $945,552 was ear-marked for pensions. When the interest charge is deducted, the balance allowed by the commission as operating expenses for pensions alone would be $868,708. There is no evidence disputing the fact of payment or the propriety or necessity for the payment. Such a payment was approved in State *ex rel.* Pacific Tel. & Tel. Co. *v.* Department of Public Service, supra. It is a proper operating expense and must be considered in computing rates.

Two annual items in controversy are operators' wages, $556,-000, and operators' employment and training, $100,000. Proof was made by the company of actual payment of these items for 1947 by projecting the third and fourth quarters of that year. The witness Davis for the commissioners said that a different amount results by projecting the fourth quarter of 1947. The commissioners testified that these items had greatly increased during the last few years, but that they would decline in the future because it will be necessary only to replace existing personnel as such personnel leaves the employment of the Southern Bell. To this testimony the company replied by showing the actual facts and conditions of employment; and based upon these statistics testimony was given that these items, instead of decreasing in the future, would increase. We think that the language of the Supreme Court of the United States in West Ohio Gas Co. *v.* Comm., 294 U. S. 79, 82 (supra), applies forcefully to this situation. It was there said: "But prophecy, however honest, is generally a poor substitute for experience. 'Estimates for tomorrow can not ignore prices of today.' [Citing] We have said of an attempt by a utility to give prophecy the first place that 'elaborate calculations which are at war with realties are of no avail.' Lindheimer *v.* Illinois Bell Telephone Co., 292 U. S. 151, 164." It was further said in that decision at page 83 that

"Present confiscation is not atoned for by merely holding out the hope of a better life to come." If the rate disallowing this expense amounts to confiscation presently, it constitutes no legal excuse or justification to prophesy that the confiscation will decrease as the years go by. These expenses are properly allowable in rate making, the exact amount of which is to be found by the trial court from the evidence.

Another annual item of expenditure by the company challenged by the commission is $150,000 local commercial expense. The company showed that this department was responsible for the proper conduct of the office business with its customers, the general public and other public utilities, giving in detail the services rendered. The only evidence offered in opposition was to show the increase in the amount of this item for the year 1947 over the year 1939, which was 312 percent, while the average number of telephones in service had increased for the same period only 102.41 percent, and that unfilled applications for services on December 31, 1947, were 50,881, a reduction of 8658 of the number of such applications on June 25, 1947. Here again the actual is challenged only by future expectancy, and the court should have found this item a proper charge.

The next item is $50,000 annually for advertising expense. This item was disapproved, by the evidence of the commissioners, upon the ground that the company already had more applications for telephones than it could fill and, therefore, it should not advertise for more. The testimony of the company's witnesses was that the advertising consisted in part of twenty notices in the papers to acquaint the public with the proper use of party lines, eleven relating to the issue and distribution of new telephone directories, four to the conversion of services from the manual to the dial telephone, all testimony of the company showing that the money was actually spent for advertising purposes considered by the management to be in the public interest. It was, therefore, a proper expense, and must be considered in computing rates. West Ohio Gas Co. v. Comm., supra.

Another annual item in this category was accounting department expenses of $160,942, which the company's evidence showed, by pointing out the details of the work, were necessary expenses

in the operation, and no evidence was offered to contradict that introduced by the company; being thus shown to be a necessary operating expense, it must be considered in computing rates.

Another annual item was rearrangements and changes expense. This item was explained in detail by evidence offered by the company, which showed the amount of work required to rearrange or change or to connect or disconnect the existing plant to make it more useful or serviceable or to coordinate the existing plant with additional plant added by new construction, the moving of telephone instruments and apparatus from one location to another, and changing the types of equipment. This evidence was met by evidence from the defendant commissioners showing increases from 1940 to 1947, and that it does not add to the value of the plant in services and, therefore, is current operating expense, and under the uniform system of accounts is segregated from the regular charges on maintenance; that the unusual and abnormal increases in this item of expense are directly attributable to the cost of the present temporarily accelerated expansion program which is necessary to provide service for more than fifty thousand would-be new subscribers. The company showed that the increase in this item from 1940 to 1947 was largely attributable to increases in wages, salaries, cost of materials, cost of services, and increases in other costs entering into the item of expense, and not, as testified by the commissioners, to the construction program. This evidence showed that the actual cost for maintenance in 1947 was $17.89 per telephone, which at the 1940 wage price level would have been $10.91, thus demonstrating that the increase is due almost entirely to the increases in wages and prices of materials. This item should, under the evidence, be allowed for rate-making purposes.

The remaining item of this category is annual depreciation expense of $79,640. The evidence as given by the company sustains this item of expense. The evidence of the defendant commissioners contradicts and asserts that the item is unjustified, but the basis upon which this conclusion is reached appears to be rather unreliable, and the trial court, in the exercise of its discretion, might have accepted either.

In accordance with the foregoing rulings on the items discussed,

it is held that only that of depreciation expense of $79,640 and lunch rooms operating loss of $97,180 could, under the evidence, have legally been deducted in its entirety from the sum stated by the commissioners to be necessary as additional revenue, and that in some others the exact amount is to be ascertained by the trial court from all the evidence. Hence, the evidence shows that, after giving full credit for the additional revenue which the commissioners say the order here under attack would produce, there would remain an actual confiscation of more than two million dollars of the company's property. While it is the duty of the Public Service Commission to searchingly inquire as to all expenses of a public utility in its rate-making function, and while such matters as contracts between the utility and its parent company should be closely scrutinized, yet where as here the only evidence touching such contract shows that the utility receives in benefits many dollars for every dollar paid under that contract, such evidence leaves no ground for criticism. The commissioners are not the managers of this company, but their function is to regulate and disapprove any dishonest or clearly inefficient conduct and practice by the utility. Public regulation must not supplant private management. *Georgia Public Service Comm.* v. *A. & W. P. R. Co.*, 164 *Ga.* 822 (supra) ; Missouri *ex rel.* Southwestern Bell Telephone Co. *v.* Public Service Commission, supra; Chicago M. & St. P. Ry. Co. *v.* Wisconsin, 238 U. S. 491 (35 Sup. Ct. 869, 59 L. ed. 1423, L. R. A. (1916 A,) 1133) ; Banton *v.* Belt Line Ry., 268 U. S. 413 (45 Sup. Ct. 534, 69 L. ed. 1020). In West Ohio Gas Co. *v.* Comm., supra, it was said: "In the absence of a showing of inefficiency or improvidence, a court will not substitute its judgment for theirs [managers of a business] as to the measure of a prudent outlay." From what has been said it follows that the court did not err in granting the interlocutory injunction against the enforcement of the rate order of January 23, 1948.

■ ■ But it is contended by counsel for the commissioners that, in attaching to the injunction order the provision that the company would be allowed to collect rates to produce the additional revenue in the amount of $360,765, the court thereby exceeded its jurisdiction and engaged in rate making, and, hence,

committed error. In Newton *v.* Consolidated Gas Co., 258 U. S. 165 (42 Sup. Ct. 264, 66 L. ed. 538), it was held: "As a condition to an injunction against a gas rate found confiscatory, the court has discretionary power, which, however, should be exercised very cautiously, to prescribe a maximum future rate for a specified period as a limitation in favor of consumers." Where the rate is enjoined, the utility can fix its own rates, provided only that they be just and fair, until new rates are made by the rate making commission. 43 Am. Jur. 603, § 101. A court of equity has power to require those seeking equity to do equity by attaching conditions to its judgment. Public Service Commission *v.* Indianapolis Rys. Inc., (Indiana) 72 N. E. 2d, 434; s. c. 76 N. E. 2d, 841; New York Mut. Gaslight Co. *v.* Newton, 269 Fed. 452; Augusta-Aiken Ry. & Electric Corporation *v.* Railroad Commission, 281 Fed. 977; Central Kentucky Natural Gas Co. *v.* Railroad Comm., 290 U. S. 264. It was equitable and right in the present case, since by injunction the rates promulgated by the Public Service Commission were rendered ineffective, and that commission was enjoined from prosecuting or penalizing or in any wise interfering with the telephone company in collecting for its services. The judgment is not rendered erroneous because a condition to insure equity is attached. In re Arkansas Railroad Rates, 168 Fed. 720; Public Service Railway Co. *v.* Board of Public Utility Commissioners, 276 Fed. 979.

But this conditional part of the judgment is subject to the criticism that it fixes a maximum of revenue which will cause a continuance of the confiscation, thereby defeating the sole object of the suit. As pointed out in division 7 of this opinion, the evidence, without contradiction, shows that to avoid confiscation it is necessary that the company obtain $3,715,527 in additional revenue annually above that resulting from rates in force prior to the January 23, 1948, rate order. With the exception of the $79,640 depreciation expense, as to which the evidence is in conflict, and also the $97,180 loss in operating lunch rooms for employees, and rate-case expense of $63,984, and fixing the total amount of other items where the evidence is in conflict, this amount must, under the evidence, be realized over and above that produced by the old rates, and the court erred in not allowing it instead of the wholly inadequate amount of $360,765.

The court has no power to interfere in any manner with the full and free functioning of the Georgia Public Service Commission in the exercise of its exclusive authority to fix future rates for this company. We do not construe the injunction order to enjoin such action, and accordingly rule that it does not prevent such free action by the commission at any time.

For the reasons stated in headnote 3, the judgment in case No. 16248, Georgia Hotel Association v. Southern Bell Telephone and Telegraph Company, is affirmed. For the reasons stated in the foregoing opinion the judgment in case No. 16249, Georgia Public Service Commission v. Southern Bell Telephone and Telegraph Company, is affirmed, and the judgment in case No. 16241, Southern Bell Telephone and Telegraph Company v. Georgia Public Service Commission et al., is reversed in so far as it imposes a condition in the injunction order as to the maximum additional revenue to be collected by the company.

Judgment affirmed on bill of exceptions No. 16248. DUCKWORTH, P. J., WYATT, and HEAD, JJ., and JUDGES KNOX, A. M. ANDERSON, CARPENTER, and SLOAN concur.

Judgment affirmed on bill of exceptions No. 16249. DUCKWORTH, P. J., and JUDGES KNOX, A. M. ANDERSON, CARPENTER, and SLOAN concur. WYATT and HEAD, JJ., dissent.

Judgment reversed on bill of exceptions No. 16241 in so far as it imposes a condition in the injunction order as to the maximum additional revenue to be collected by Southern Bell Telephone and Telegraph Company. DUCKWORTH, P. J., and JUDGES KNOX, A. M. ANDERSON, and SLOAN concur. Judge CARPENTER concurs specially for the reason that he is of the opinion that the court was without authority to impose any condition whatever in the injunction order. WYATT and HEAD, JJ., dissent.

JUDGE A. M. ANDERSON, concurring specially. I concur in the judgments, am in full accord with the majority opinion as to all fundamental principles of law presented therein and necessary to a determination of the issues submitted, and I agree with what I conceive to be a correct interpretation of the language used. But I fear that some parts of the opinion, particularly if considered out of context with the whole, may give rise to interpretations inconsistent with my own views and, I believe, those

of other members of the court. I will confine this discussion generally to an effort to set forth with some degree of clarity my construction of the opinion in those particulars considered to be capable of misconstruction.

The Public Service Commission is the only body in this State having the power to fix rates for public utilities. Its powers are in no sense judicial and may not be reviewed by the courts as such. Courts of equity do, however, have the authority and the duty to entertain entirely independent proceedings instituted by a public utility and directed to the court, properly setting forth that an order of the Public Service Commission providing rates for the complaining utility is presently causing confiscation of its property, and to enjoin the enforcement of such order, if the utility produces proof in court clearly showing that it is being thus deprived of its constitutional rights and that it is without adequate remedy save in a court of equity. The courts will then determine only the question of actual confiscation, and will not directly or indirectly fix rates, either in an interlocutory hearing or upon a final trial. Whether a court of equity which, in an interlocutory order, restrains the enforcement of a rate schedule set up by the Public Service Commission will go further and attach to such order a condition limiting the amount of additional revenue the utility can collect while thus without regulation as to rates by the Public Service Commission, is a matter resting in the sound discretion of the trial court.

The majority opinion so positively demonstrates these controlling principles that it is considered not subject to misinterpretation in these respects, nor, in my own opinion, to question as to the soundness of its conclusions.

A court of equity in an interlocutory hearing has fact-finding powers, and this court will not generally disturb an interlocutory order supported by some evidence; but where it is made to appear that the order is based upon an erroneous interpretation of the law materially affecting the results, it will be set aside on that ground, and, in an appropriate case, the case remanded for further consideration. See *Ballard* v. *Waites*, 194 *Ga.* 427 (21 S. E. 2d, 848) ; *Washington National Insurance Co.* v. *Savannah*, 196 *Ga.* 126 (26 S. E. 2d, 359) ; *Colclough* v. *Bank of Penfield*, 150 *Ga.* 316 (103 S. E. 489) ; *Dowling* v. *Doyle*, 149 *Ga.* 727 (102 S. E. 27).

In the present case the restraining order granted was demanded by the evidence. The evidence, in some instances entirely without contradiction, and in others the only reasonable inference and deductions possible from the factual and opinion statements presented, clearly renders the condition erroneous, in that confiscation would continue to some undetermined extent in spite of the additional revenue authorized. Still other evidence, much of it largely opinion evidence, could have been accepted by the Judges of Fulton Superior Court as clearly establishing the whole or part of other claimed expense items, or found by them to be insufficient for that purpose.

When the court found confiscation, it could have stopped there. The judges were not required to attach a condition to the restraining order, but since they considered it proper to do so, the condition should have permitted the utility to· set rates sufficient to produce an income adequate to avoid confiscation of its property, to the extent that such action is warranted by the pleadings and required by the evidence produced in the lower court.

It is clear from a consideration of the opinions of the Judges of Fulton Superior Court filed in the case, which opinions are referred to in the formal order now under review as being attached thereto and are a part of the record before us, that the particular condition attached to the order resulted from an erroneous interpretation of the law in certain material aspects and was not a condition fixed entirely upon a finding of fact by the lower court after a full consideration of all of the evidence in the case, some undisputed, but other matters requiring the court below to employ its fact-finding powers upon an interlocutory hearing. The law was never correctly applied by the judges .to the evidence, and the extent of confiscation thereby determined. Though the "test period" doctrine is unsound as it was applied to this case, items of expense, about which there was sufficient evidence to warrant a finding that such items, or some parts thereof, should have been allowed, were not considered at all in fixing the condition, the court apparently proceeding upon the theory that the commission would later provide for the recovery of these items if the "test period" rates did not produce adequate income. The petitioners' demands for consideration of other

items of expense were denied on the theory that, if such alleged losses did occur, they could and would be recovered from rates to be fixed by the commission in the future. The majority opinion of this court shows this legal position to be untenable. When a court of equity in an interlocutory order restrains the enforcement of a rate order of the Public Service Commission and considers it proper to attach a condition limiting the amount of revenue which the utility is permitted to raise while thus free from the rate regulations enjoined, it should attach such condition only after allowing credit for all items of expense clearly proven to be necessary to future operations, including not only those not in dispute and those established by every fair and reasonable deduction from the evidence, but also such other items, or parts thereof, if any, as the court, acting in its capacity as a fact-finding body, may find after a full consideration of all of the evidence to be clearly proven and proper to be considered under the rulings of this court. On the other hand, while a court of equity should right a clear present wrong when properly presented to it, it can do no more than that in such a case as the one before us. Only expenses proven to be necessary to future operations are pertinent to the issue here. Rates are fixed to cover operating expenses to be incurred in the future, not to recoup past losses; and the courts in passing upon the questions of confiscation should consider only the items of expense clearly proven as reasonably certain to be incurred in the future and properly chargeable to the period considered for rate-making purposes.

Proven expenditures of the nature usual to the business in periods antedating the application for relief are entirely proper for consideration, and, unless rebutted, should bear heavily in the determination of future expenses of operation; but they are not absolute criteria, and I believe that nothing in the opinion of the majority of the court should be construed as holding that any designated expenditure of a particular amount in the past must be accepted as a definite and final amount to be allowed by the lower court in preventing future confiscation, unless it definitely appears that such item will not be less in the future. Nor do I think that its effect is such that the trial court is prevented from determining that a part of a claimed item of expense, not in the

nature of a past loss, is chargeable to future years, rather than to the present period used for rate-making purposes, where the evidence will support such a finding as, for example, in the matter of "rearrangement and changes" expense items. It must be accepted as a sound proposition that a court of equity, in such a case as the one here, has as much discretion as the commission, if not more, in allowing and disallowing expense items claimed, and is invested with the discretion to disallow such items where the necessity therefor is not satisfactorily proven to the court. While it is true that the commission cannot substitute its judgment for that of admittedly capable and efficient management, yet neither it nor the courts are to be controlled entirely by the will of management; certainly, when the utility comes into a court of equity for relief in a matter generally under the jurisdiction of the commission, the utility must carry the burden of proving that its operations are efficient and that every item of claimed expense is a reasonable and proper charge against the public served by it. This burden is—and ought to be—heavier than the burden before the commission.

All that is said here and in the majority opinion about the facts of this case pertains, of course, only to interlocutory proceedings. The facts may be entirely different upon final trial. The real purpose of all the discussions of the detailed facts was to show that the condition attached to the order illegally restricted the petitioner and resulted in further confiscation. I believe that it was not the purpose of this court generally to inquire into the evidence and relate certain facts for any other purpose or to bind the lower court in any instance where it might in the exercise of its fact-finding powers reach a different result from a consideration of the evidence.

It is further my understanding that this court holds that the lower court cannot place any restraint whatever upon the commission's right to promulgate and place into effect a new rate order at any time, and without any restriction on account of any condition in the restraining order. To place such a restraint or restriction upon the commission would be but to indirectly assume regulatory powers over utilities and illegally circumscribe the commission in the future exercise of its constitutional duty. The

petitioner is entitled, in the proceedings now before the court, to a restraining order against the enforcement of the confiscatory rate order of the commission, but to nothing more.

Furthermore, it must be presumed that all further action on the part of the commission will be taken in the light of the law as it has been interpreted by this court. If the commission subsequently puts into effect another confiscatory order, the petitioner has its remedy in the courts.